**Richmond**

JAMES D. CAMPBELL, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0049-89-3

Decided May 14, 1991

---

478

Counsel

Edward G. Stout (Bressler, Curcio & Stout, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## UPON HEARING EN BANC

Opinion

BARROW, J.—This is a criminal appeal heard by this court sitting *en banc*. In it we consider the application of the contemporaneous objection rule to a challenge to the sufficiency of evidence of guilt. Also, we address the nature of the evidence necessary to prove the intent required for malicious wounding in a case of child abuse.

We hold that where an issue of sufficiency of evidence is presented to a trial court, sitting without a jury, in a motion to strike at the conclusion of the Commonwealth's evidence and, upon its denial and upon conclusion of the defendant's evidence, the same issue is presented in the defendant's final argument to the court, the defendant has preserved his right to appeal this issue, even though he did not make a motion to strike at the conclusion of his own evidence. We also hold that evidence that a parent or stepparent has caused his or her child bodily injury, has done so maliciously, and with an intent to cause permanent injury, even if he fails in this intention, is sufficient to support a conviction of malicious wounding.

## CONTEMPORANEOUS OBJECTION

At the close of the Commonwealth's evidence, defense counsel made a motion to strike the Commonwealth's evidence and argued that there was no evidence that the defendant had the intent necessary to support a conviction of malicious wounding. The trial court denied the motion, and the defendant introduced evidence on his own behalf. The defendant's attorney failed to renew his motion to strike at the conclusion of his own evidence. However, in his closing argument, he argued:

> We are talking about parenting skills, and we are talking about, frankly, very poorly developed parenting skills. But *the only evidence* before this court *is an attempt, albeit a very poor attempt, to use those parenting skills . . . .*

> [Code § 18.2-51] *requires the intent to disfigure.* The evidence is that there is no disfigurement. The testimony and the uncontradicted testimony was that no one ever saw him act with an attempt to, and with the intent to disfigure . . . .

> And, again, we admit that that is a poor use of parenting skills, but *it does not go so far with the requisite intent* to justify conviction under 18.2-51 . . . .

> . . . I see more reversals, far more reversals under [§ 18.2-51] than is typically the rule under any other criminal statute that I am aware of. That is because the court strictly construes it, and that is because *it requires in this case the intent to permanently disfigure, and that intent has not been shown . . . .* (emphasis added).

In its ruling, the trial court discussed our opinion in *David v. Commonwealth*, 2 Va. App. 1, 340 S.E.2d 576 (1986), as to the issue of intent. The court then stated:

> I have no problem in finding beyond any reasonable doubt that at the time these blows were administered they were done with the intent to disfigure or disable the victim of this offense.

> It is hard to understand why or how there should be, but I think malice from all the circumstances can be inferred from the acts committed, and I find Mr. Campbell guilty of mali-

ciously causing bodily injury to the victim of this offense with the intent to disfigure or disable . . . .

On appeal, a ruling of a trial court cannot be a basis for reversal unless an objection is stated "together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. An appeal of an issue of sufficiency of evidence is barred under this rule if not raised at trial. *See Floyd v. Commonwealth*, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978). It is sufficient, however, if "at the time the ruling or order of the court is made or sought, [a party] makes known to the court the action which he desires the court to take or his objections to the actions of the court and his grounds therefor." Code § 8.01-384. The goal of the contemporaneous objection rule is to avoid unnecessary appeals, reversals and mistrials by allowing the trial judge to intelligently consider an issue and, if necessary, to take corrective action. *Head v. Commonwealth*, 3 Va. App. 163, 167, 348 S.E.2d 423, 426 (1986).

Here, defense counsel moved to strike the Commonwealth's evidence at the close of the Commonwealth's case on the grounds that the evidence did not establish the intent necessary for a conviction of malicious wounding under Code § 18.2-51. Further, during his closing argument to the trial court, defense counsel argued that the evidence did not establish the intent necessary to convict the defendant of malicious wounding. In its ruling, the trial court expressly addressed the issue of intent and found the evidence sufficient. On this record, there is no question that the trial court was adequately advised of the defendant's position, that it did consider the issue raised, and that it had the opportunity to take corrective action. Therefore, the purpose underlying the contemporaneous objection rule was fulfilled, and it would be a useless technicality to hold that the failure of the defendant's attorney to renew his motion to strike at the conclusion of his own evidence barred this appeal.

In *Williams v. Commonwealth*, 6 Va. App. 412, 368 S.E.2d 293 (1988), a divided panel of this court held that an appeal of the sufficiency of the evidence in a criminal case tried without a jury was barred by the failure of the defendant to move to strike the evidence even though the closing argument raised the question

of the sufficiency of the evidence. *Id.* at 414, 368 S.E.2d at 294. To the extent that *Williams* holds that an appeal of the sufficiency of the evidence is barred by the failure to move to strike the Commonwealth's evidence at the conclusion of the defendant's evidence even if the issue of sufficiency is clearly presented to the trial court by a motion to strike at the conclusion of the Commonwealth's evidence and in a closing argument to the trial court, we overrule it. It is sufficient if at the time of the court's ruling the defendant states what action he wants the court to take and the grounds for the action. Code § 8.01-384.

Not every closing argument accomplishes this objective. A closing argument may address other issues: application of a statute of limitations, an affirmative defense or the weight of the evidence. Furthermore, in a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law. Only a motion to strike the evidence accomplishes that objective in a jury trial.

In this case, the argument was addressed directly to the court and expressly raised the issue of the sufficiency of the evidence of intent. For this reason, we hold that the trial court had an opportunity to, and did, consider and resolve the issue now raised on appeal. We, therefore, are not barred from addressing the issue of sufficiency of the evidence raised in this appeal.

### SUFFICIENCY OF THE EVIDENCE

Since the defendant chose to introduce evidence on his own behalf following the denial of his motion to strike the Commonwealth's evidence, the sufficiency of the evidence must be judged by the evidence presented by the defendant as well as by the evidence presented by the Commonwealth. *Spangler v. Commonwealth*, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948). Also, we must view this evidence in the light most favorable to the Commonwealth. *Norman v. Commonwealth*, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986).

Early in the morning of October 22, 1988, the defendant's wife, Janie Campbell, left the defendant, James Campbell, Jr., alone with her two children, the defendant's stepson, Cecil Campbell, age three, and his natural son, Joshua Campbell, age two. As his mother left for work, Cecil watched her from a window, scream-

ing and crying because he did not want her to go. The defendant called Cecil into his bedroom, where he was trying to sleep, and asked the child, "Do you want something to do all that yelling about?" Cecil responded that he did not. The defendant said, "Shut your face and go in your room and lay back down." Cecil continued to cry, so the defendant picked up a patent leather belt and gave him "two licks" with it. The child went back to his room and was quiet.

About an hour later, Joshua woke the defendant and told him that he wanted to eat. The defendant told him it was too early to eat. Joshua went back to his bedroom, and fifteen or twenty minutes later, he and Cecil began fighting and yelling at one another. The defendant called the boys into his room and spanked both of them with the belt. He struck Joshua five times and sent him to his room. The defendant then struck Cecil fifteen times, five times for fighting with Joshua and ten times for fighting with his mother in public earlier in the week. The defendant testified that he was not present during Cecil's fight with his mother and he did not "really know what happened."

After returning home from work later that evening, Mrs. Campbell was shocked to discover bruises on Cecil's back, hips and buttocks. Mrs. Campbell became upset and called her friend Linda. After confronting the defendant about the bruises on Cecil's back and receiving an indifferent response, Mrs. Campbell took Cecil to Linda's house. Linda called the police, who in turn contacted the Department of Social Services. The Department of Social Services suggested that Mrs. Campbell take Cecil to her mother, Shirley Wampler.

The next day, Mrs. Campbell asked Mrs. Wampler to keep Cecil because she felt she could not take him back to her home. Mrs. Campbell told Mrs. Wampler to look at Cecil's back. When Mrs. Wampler did so, she testified that she "went frantic" because of the bruises she saw on his legs, back and shoulders. Mrs. Wampler arranged for the child to be taken to the hospital, where photographs were taken.

■ Child abuse may be prosecuted under Code § 18.2-51. *See Christian v. Commonwealth*, 221 Va. 1078, 1081, 277 S.E.2d 205, 207-08 (1981). However, to support the defendant's conviction, the evidence must establish that the defendant (1) maliciously

shot, stabbed, cut or wounded his stepson or "by any means" caused him bodily injury and (2) did so with the "intent to maim, disfigure, disable, or kill." Code § 18.2-51.[1]

■ There is no question that the defendant caused his stepson "bodily injury." The defendant relies on *Harris v. Commonwealth*, 150 Va. 580, 142 S.E. 354 (1928), to argue that there must be a breaking of the skin to constitute malicious wounding. *See id.* at 586, 142 S.E. at 356. Since *Harris*, however, the statute has been more broadly interpreted to include any bodily injury. *Bryant v. Commonwealth*, 189 Va. 310, 316-17, 53 S.E.2d 54, 57 (1949). The critical issue is, therefore, the intent with which the injuries were inflicted. The injuries must be inflicted maliciously and with intent to maim, disfigure, disable or kill. The nature and extent of the bodily injury and the means by which accomplished may reflect this intent but are not exclusive factors.

■ Malice may be inferred from the evidence and may be found "in the intentional doing of a wrongful act without legal justification or excuse." *Fletcher v. Commonwealth*, 209 Va. 636, 640, 166 S.E.2d 269, 272 (1969). Although "a parent has a right to punish a child within the bounds of moderation and reason," he or she is not legally justified in doing so to the extent that it "exceeds due moderation." *Carpenter v. Commonwealth*, 186 Va. 851, 861, 44 S.E.2d 419, 423 (1947); *see also Diehl v. Commonwealth*, 9 Va. App. 191, 195, 385 S.E.2d 228, 230 (1989). The trier of fact could find from the evidence that the defendant intentionally injured the child without legal justification and, therefore, acted with malice.

■ The defendant principally argues not the lack of evidence of bodily injury or malice, but the lack of evidence of his intent to maim, disfigure, disable, or kill his stepson. *See Banovitch v. Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954). A person's intent in performing an act is the purpose formed in the person's mind for the performance of the act. *Hargrave v. Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). It

---

[1] Code § 18.2-51 reads:
If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If the act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

"may be, and frequently is, shown by circumstances." These circumstances include a person's statements and his or her conduct. *Id.* A person's conduct may be measured by its natural and probable consequences. The finder of fact may infer that a person intends the natural and probable consequences of his acts. *Kelly v. Commonwealth*, 8 Va. App. 359, 373, 382 S.E.2d 270, 278 (1989).

■ The word "disfigure" means a "permanent and not merely a temporary and inconsequential disfigurement." *Lee v. Commonwealth*, 135 Va. 572, 578, 115 S.E. 671, 673 (1923). Similarly, the word "disable" must refer to a permanent, not a temporary, disablement. Thus, if a person intentionally takes an action, the probable consequence of which is the permanent disability of another, even if permanent disability does not result, he or she can be found to have intended to cause a permanent disability.

Here, the trial judge heard or saw no direct evidence of intent other than the defendant's testimony that he intended only to discipline the child. However, the trial judge did hear testimony that Cecil did not want his mother to leave that morning; that Cecil persisted in bothering the defendant while he slept; that the beating took place only after the defendant was alone with the child; that Cecil was struck fifteen times with the belt after the stepchild had been fighting with the defendant's natural child, Joshua, the younger of the two children; and that both Mrs. Campbell and Mrs. Wampler were shocked when they saw the marks on Cecil's back. Most importantly, the trial judge viewed photographs taken of Cecil at the hospital a day after the beating.

A picture may speak a thousand words, and these do. These four pictures reveal an appalling story of a brutal beating of a three-year-old child. The marks on the child range from his shoulder blades to his buttocks on his backside and from under his arm to his upper thigh on the right side of his body. The marks are concentrated on his upper back and lower right side. Most of the marks are thin, long bruises, purplish-brown in color, which appear to have been caused by a belt. Two other marks, however, appear to have been caused by something else. The first one, between Cecil's shoulder blades and to the right of his spinal column, consists of two well-defined, reddish half-ovals, one inside the other. The outer half-oval is highlighted by a bruise and another less-pronounced red mark extending like a tail approxi-

mately half an inch below it. It appears that this mark was caused by something other than the leather portion of a belt, perhaps the buckle. The second of these two most atrocious marks is located on Cecil's waist near where the child's right kidney is located. It extends from a few inches to the right of his spinal column on his backside for approximately three inches to the right side of his body. This bruise, shaped like a sunspot, is darker and more brownish in color than the other bruises on Cecil's body.

The defendant argues that a trial judge could not infer from these injuries an intent to disfigure or disable. However, the trial judge could have inferred from all the facts and circumstances that the defendant intended to do exactly what he did — beat the child with such force that it left his back and side extensively marked and bruised. Further, the trial judge could have found that the probable and natural consequence of this act, given the force with which the blows were applied and the location of the marks near Cecil's spinal column and right kidney, was disfigurement or disablement of the child.

In determining the probable consequences of an aggressor's actions and his or her intent to achieve those consequences, the comparative weakness of the victim and the strength of the aggressor may be considered. *See Bryant*, 189 Va. at 317, 53 S.E.2d at 58 (eighteen-year-old army corporal struck seventy-six-year-old man); *Shackelford v. Commonwealth*, 183 Va. 423, 426-27, 32 S.E.2d 682, 684 (1945) ("strong, hale, heavy-set man" attacked a "frail woman fifty years of age"). Where a victim is significantly weaker than an aggressor, a physical attack is more likely to cause severe bodily injury.

Cecil was such a victim. A three-year-old child with no way to defend himself, except by screaming and crying, received a brutal beating from the much stronger defendant. We conclude that the trial judge could have inferred from all the evidence that this beating was delivered with the intent to disfigure or disable the child.

For the foregoing reasons, therefore, we affirm the defendant's conviction of malicious wounding.

*Affirmed.*

Koontz, C.J., Cole, J.,* Keenan, J., and Moon, J., concurred.

Baker, J., concurring.

I concur with the majority's finding that the judgment of conviction should be affirmed. I respectfully disagree that a different rule for renewing motions to strike should apply to jury trials than that the majority establishes for bench trials. In declaring that distinction this Court has infringed on the sole power of the Supreme Court of Virginia to establish rules for the trial of cases in the Commonwealth. I would continue to follow the long-established precedents declared in *Williams v. Commonwealth*, 6 Va. App. 412, 368 S.E.2d 293 (1988), and cases there cited.

Coleman, J., concurring.

An *en banc* hearing was granted in this case because the panel before which this appeal was pending requested pursuant to Code § 17-116.02(D) that the Court convene in order to reconsider the panel's holding in *Williams v. Commonwealth*, 6 Va. App. 412, 368 S.E.2d 293 (1988). In *Williams*, a divided panel of this Court held that an appeal which challenged the sufficiency of the evidence in a bench trial was procedurally barred because defense counsel had not made a motion to strike the evidence or a motion to set aside the verdict. More precisely, the *Williams* case held that defense counsel's closing argument that the accused should be found not guilty because the evidence did not prove he intended to distribute the cocaine which he possessed was not the equivalent of a motion to strike. *Id.* at 414, 368 S.E.2d at 294. Today, the Court sitting *en banc* reverses *Williams* and holds that a challenge to the sufficiency of the evidence was preserved for appeal where defense counsel in a bench trial during closing argument stated to the judge that, because the Commonwealth's evidence failed to prove an intent to distribute, the Commonwealth had not proven the defendant's guilt beyond a reasonable doubt.

In my view, the majority bases its holding on the fact that, because the trial judge in deciding the issue of guilt necessarily had

---

* Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.

to consider the sufficiency of the evidence in order to find that each element of the offense was proved, the sufficiency question was considered by the trial court and was, therefore, preserved for appeal. However, because the sufficiency of the evidence had not been challenged by an appropriate motion or in a manner which made "known to the court the action which he desire[d] the court to take," *Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164, 166 (1991) (quoting Code § 8.01-384), I would dismiss this appeal under Rule 5A:18 rather than affirm the conviction.

In numerous cases, the Supreme Court has applied its counterpart to our Rule 5A:18, Rule 5:25, to nonjury trials as well as to jury trials. In my opinion, for reasons later explained, both the bench and bar will be better served by our applying Rule 5A:18 uniformly to both bench and jury trials.

In this case, the defendant did not preserve a challenge to the sufficiency of the evidence by moving to strike the evidence at the conclusion of all the evidence. *See generally White v. Commonwealth*, 3 Va. App. 231, 348 S.E.2d 866 (1986). He did not make a motion to set aside the verdict on grounds of sufficiency. *McGee v. Commonwealth*, 4 Va. App. 317, 321-22, 357 S.E.2d 738, 739-40 (1987). He does not present "good cause" for having failed to make those required and necessary motions. *Mason v. Commonwealth*, 7 Va. App. 339, 345, 373 S.E.2d 603, 606 (1988). Finally, he does not assert a reason why we should waive the contemporaneous objection requirement in order to prevent a miscarriage of justice. *Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). In short, he neither properly preserved the issue for appeal nor presented sufficient grounds to waive the requirements of Rule 5A:18.

Although I would dismiss this appeal, I concur with the majority that, on the merits, the evidence was sufficient to sustain the conviction. As to the propriety of my joining with the majority in addressing the merits of the sufficiency issue, which I would hold to have been procedurally barred, I have no reservation about the correctness of my doing so because a procedural bar analysis under Rule 5A:18 necessarily requires a *sub silentio* determination by the Court that the Commonwealth established a *prima facie* case of guilt. If no crime had been charged or proven, we would be required to address the merits of the issue in order to attain the ends of justice and prevent a miscarriage of justice. *See*

*Jimenez v. Commonwealth*, 241 Va. 244, 402 S.E.2d 678 (1991) (applying the ends of justice exception to Virginia Supreme Court Rule 5:25 to prevent a conviction for a "non offense"); *Ball v. Commonwealth*, 221 Va. 754, 758-59, 273 S.E.2d 790, 793 (1981) (ends of justice exception applied because the defendant "has been convicted of a crime of which under the evidence he could not properly be found guilty"); *see also Mounce v. Commonwealth*, 4 Va. App. at 436, 357 S.E.2d at 744 ("the 'ends of justice' provision may be used when the record affirmatively shows that a miscarriage of justice has occurred"). The Supreme Court has acknowledged that the ends of justice exception will apply only "in those rare instances when it is necessary" to prevent a miscarriage of justice. *Ball*, 221 Va. at 758, 273 S.E.2d at 793. Thus, by invoking the procedural bar, as I would do, and by refusing to invoke the ends of justice exception, I necessarily find, without fully addressing the merits of the issue, that the elements of the offense had been charged and proven. Therefore, by invoking the procedural bar, I impliedly affirm the sufficiency of the evidence and expressly state my assent to the sufficiency holding.[2]

The dispositive issue in this case is whether the motions or proceedings before the trial court raised the question of whether a *prima facie* case of malicious maiming in violation of Code § 18.2-51 had been established. The majority opinion, as did the panel opinion in *Williams*, reiterates the clearly defined purposes underlying the contemporaneous objection rules, Rule 5A:18 and Supreme Court Rule 5:25. These rules are designed "to avoid unnecessary appeals, reversals and mistrials by allowing the trial judge to intelligently consider an issue and, if necessary, take corrective action." The majority argues that the rule should not be applied so strictly as to prevent a merit review of an issue which was raised before the trial judge with sufficient particularity that the judge had the opportunity to consider the question intelligently. The majority holds that it is sufficient if " 'at the time the ruling or order of the court is made or sought, [a party] makes known to the court the action which he desires the court to

---

[2] *Compare Lee v. Lee*, 12 Va. App. 512, 404 S.E.2d 736 (1991) (*en banc*). I joined Chief Judge Koontz in dissent in *Lee* in the view that the issues before the trial court in that case had been preserved for appeal because they had been clearly put in issue by the pleadings, the evidence, and the procedure adopted by the court and counsel which specifically identified the issues which the trial judge was called upon to decide.

take or his objections to the action of the court and his grounds therefor,'" citing Code § 8.01-384. *See also Jimenez v. Commonwealth*, 241 Va. at ____, 402 S.E.2d at ____; *Weidman v. Babcock*, 241 Va. at 44, 400 S.E.2d at 166.

My basic disagreement with the majority is with its holding that the closing argument of counsel in this bench trial constituted the equivalent of a motion which challenged the sufficiency of the evidence. The majority holds that argument to the judge that he should find Campbell "not guilty" because the evidence did not establish the intent necessary to convict him of malicious wounding is the equivalent of a motion to strike the evidence which challenges the sufficiency of the evidence. I do not believe that closing "argument," even that which addresses the issue of whether the Commonwealth met its burden of proof, is an adequate substitute for a motion to strike the evidence.

The majority states that, because the trial court in making its guilt determination must necessarily consider whether the evidence was sufficient, it is a "useless technicality" to hold that the failure to move to strike or to set aside the verdict should bar consideration of the sufficiency of the evidence on appeal. Judge Benton, in his dissent in *Williams v. Commonwealth*, similarly characterized the distinction between the closing argument in a bench trial and a motion to strike as a "hypertechnical" application of Rule 5A:18.

The requirement of Rule 5A:18 that an objection or motion be made with specificity in order to preserve an issue for appeal is by its very nature a technical requirement. This technical requirement has served and continues to serve useful and meaningful purposes in the trial and appellate courts. While I would preserve the requirement that a motion be made, I would apply the rule liberally and require nothing more than a statement of the relief requested and reason therefor.

For the reasons which I expressed in *Williams v. Commonwealth*, 6 Va. App. at 414, 368 S.E.2d at 294, closing argument that asks the trial judge to weigh the evidence, to make credibility determinations, and to find the accused "not guilty" is not an adequate substitute for a motion to strike or a motion to set aside the verdict. Here, counsel argued that the evidence did not establish beyond a reasonable doubt that James Campbell intended to

maim, disable, disfigure, or kill young Cecil Campbell. No motion to strike the evidence was made. The only "ruling" made by the trial judge was his finding of guilt. No motion to set aside the verdict was made. By its holding, the majority simply assumes the defendant was dissatisfied with the ruling (the finding of guilt) and may appeal, although no "on the record" objection appears with specification as to the basis of the objection.

A motion to strike the evidence serves a totally different function than closing argument as to the weight of the evidence. A motion to strike requires the trial judge to review the sufficiency of the proof as to each element of the crime. Closing argument, on the other hand, may address many issues in the case other than the sufficiency of the evidence of guilt. When the motion to strike has merit, the trial judge is required to strike the evidence and dismiss the charge. As a practical matter, an accused may find it of no great consequence whether he or she be found "not guilty" or whether the charges are "dismissed" because the state has failed in its basic proof that a crime was committed. However, the fact remains that a motion to strike is a well-established and well-defined means of directing a trial judge's attention to a specific legal issue. Thus, the distinction between "argument" and "motions" serves a meaningful purpose. I would hold that closing argument does not make "known to the court the action [of striking the evidence and dismissing the charge] which [the defendant] desires the court to take . . . and his grounds therefor." Code § 8.01-384.

I also believe the majority holding does a disservice to the bar, to the trial courts, and to the appellate courts by obfuscating the requirements for preserving for an appeal a challenge to the sufficiency of the evidence. While no particular litany should be required and a motion could be made during closing argument in a bench trial, at the very least, the trial judge should be clearly informed as to what he or she is being asked to do and the reasons therefor.

The majority holding also does a disservice to the bar by condoning imprecise motion practice. By not requiring defense counsel to define clearly to the trial judge the relief sought, opposing counsel (the Commonwealth's attorney) may have no opportunity to respond. Both trial and appellate courts will be left to fend for themselves and identify vital issues that affect the lives of persons

charged with criminal offenses. The holding imposes a new and substantial burden on the trial courts because they now must be alert to decipher the true import of the argument. In the final analysis, almost every closing argument will ask the court for a finding of "not guilty." Carried to its logical extension, the majority holding will now allow an automatic appeal on the ground of sufficiency of the evidence.

The majority holding also does a disservice to this Court. By permitting issues to be raised on appeal that were mentioned in closing argument, the majority invites confusion. In the absence of a specific motion and ruling, we will be forced in the first instance to sort through the record of closing argument to determine the nature of the argument, diverting limited judicial resources from a determination of the merits of an appeal. Rather than requiring trial judges to divine what "motions" might be cloaked in "argument," I would invoke the procedural bar of Rule 5A:18 and dismiss this appeal.

Benton, J., concurring in part and dissenting in part.

For the reasons I have previously stated in *Williams v. Commonwealth*, 6 Va. App. 412, 415-16, 368 S.E.2d 293, 294-95 (1988) (Benton, J., dissenting), I concur in that portion of the opinion which holds that defense counsel's closing argument to the trial court constituted a sufficient contemporaneous objection to preserve for appeal the question of the sufficiency of the evidence.

I do not join in the remainder of the opinion because I believe the evidence is insufficient to support a conviction of malicious wounding. The evidence establishes that James D. Campbell, Jr., and his wife experienced difficulty in rearing the wife's child and in correcting the child's behavior. Campbell's wife testified that when she attempted to correct the child's inappropriate behavior, the child rebelled. Both Campbell and his wife testified that they normally used corporal punishment as a means of disciplining the child when he "was out of . . . control." Campbell's wife related that the child often refused to follow her instructions and that:

> he would either backtalk, tell me he's going to do it anyway, hit me, cuss me, tell me he hates me. They have been incidents he's picked up little chairs and threw them at me.

He's cussed at me. It's continuously, he will not listen to me. I have, nine out of ten times I'd have to go to [Campbell] because he would listen to [Campbell] and he wouldn't me.

Campbell's wife attributed the child's behavior problems to abusive treatment he received during the three years he was in his grandmother's custody. She said the child's grandmother "would pull him around; . . . strike him with her hands in the face; pull his hair; call him a son-of-a-bitch, a little motherfucker, just things that no adult should even use on another adult, let alone a child."

The incident that gave rise to the prosecution occurred when Campbell was disciplining the child. Campbell explained the punishment that he administered as follows:

A. I gave him five licks for fighting, for him and Josh fighting; I gave him the five licks for showing his butt out in public with his mom; and I gave him the five licks for fighting her.
Q. Now, what was your purpose in doing this?
A. Well, all, every time I whip my boys, I whipped them to correct them, to make sure that they have a strong upbringing. That is, I believe that is the only time I really, there is things they do that does not require a whipping, and there is things they do that do require a whipping, and both of them know that when they go out there is a certain way they have to act.

One thing I do not allow, and their momma knows it and their granny knows it, both of them have experienced, I do not allow either one of the boys to hit their mom or their granny.

The record unequivocally establishes that the punishment was given for the purpose of instilling discipline and that Campbell discontinued the beating of his own volition. In addition, the injury to the child was not permanent. The mother testified that the child "bruises very easily" and that the marks on the child's back disappeared shortly after the incident.

The sole question before us is whether Campbell in spanking his stepson did "maliciously . . . wound" or "cause him bodily injury,

with the intent to maim, disfigure, disable, or kill." Code § 18.2-51. I concur that the evidence was sufficient to prove beyond a reasonable doubt that Campbell caused bodily injury to the child when he beat him with a belt. The bruises were evident. *See Bryant v. Commonwealth*, 189 Va. 310, 316-17, 53 S.E.2d 54, 57-58 (1949). I do not agree that the evidence proved that Campbell acted maliciously or intended "to maim, disfigure, disable, or kill" the child, as required to prove a violation of Code § 18.2-51.

It has long been established in Virginia "that while parents or persons standing in *loco parentis* may administer such reasonable and timely punishment as may be necessary to correct faults in a growing child, the right cannot be used as a cloak for the exercise of uncontrolled passion, and that such person may be criminally liable for assault and battery if he inflicts corporal punishment which exceeds the bounds of due moderation." *Harbaugh v. Commonwealth*, 209 Va. 695, 697-98, 167 S.E.2d 329, 332 (1969); *see also Carpenter v. Commonwealth*, 186 Va. 851, 860-61, 44 S.E.2d 419, 420-21 (1947). Indeed, in *Harbaugh*, where the immoderate use of punishment on a five year old child caused badly bruised buttocks with blood seepage and purple marks and welts on both legs such that the outer layer of skin stuck to the child's underpants, *Harbaugh*, 209 Va. at 696, 167 S.E.2d at 331, the defendant was convicted of assault and battery. In *Carpenter*, where a seven year old child was beaten so badly that her entire body was covered with bruises that were open and bleeding and her face had a large bleeding gash, *Carpenter*, 186 Va. at 856, 44 S.E.2d at 421, the defendant similarly was convicted of assault and battery. In both cases, as in this case, the trier of fact was required to decide whether the degree of punishment was immoderate and excessive, and in both cases the trier of fact properly found it to be so.

Although the trier of fact could have found that the "severity of the whipping showed an utter lack of a due appreciation of parental duty," *id.* at 866, 44 S.E.2d at 426, such a finding does not exclude passion that flows from the lack of good parenting skills. In the absence of other aggravating circumstances, bodily harm resulting from a lack of good parenting skills does not prove that punishment designed to correct ill behavior was maliciously inflicted. *Cf. Christian v. Commonwealth*, 221 Va. 1078, 1079-81, 277 S.E.2d 205, 207 (1981) (cigarette burn under the eye, broken

ribs, and fractures of both legs caused by twisting force are circumstances of such violence and brutality against a six month old child that an inference of ill-will arises from the grievous nature of the injury).

Although a parent's belief that a child's ill conduct merits punishment does not justify the use of immoderate punishment, that belief does negate the existence of malice. "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Dawkins v. Commonwealth*, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). Here, there is no evidence of a gratuitous assault upon the child. Indeed, the evidence is consistent with an immoderate use of punishment intended to correct ill behavior. Thus, there has been no showing toward the child of ill will, corrupt motive, or evil mind. *See Fletcher v. Commonwealth*, 209 Va. 636, 640, 166 S.E.2d 269, 272 (1969). The evidence in this case abundantly establishes that the beating that the child suffered was the product of poor parenting skills and not malice.

I believe that the majority mistakenly reasons that the factfinder reasonably could have found that Campbell intentionally committed a wrongful act without legal justification and thus acted maliciously. It has long been the rule in Virginia that:

> [a] parent, or one standing *in loco parentis*, has the authority to administer chastisement or correction to his child. The moral sense of children is not sufficiently developed in all cases to admit of a successful appeal to the child to desist from wrongdoing without the aid of physical coercion.

*Carpenter v. Commonwealth*, 186 Va. at 861, 44 S.E.2d at 423 (quoting *State v. McDonie*, 89 W. Va. 185, 109 S.E. 710, 715 (1921)). Thus, corporal punishment is not wrongful in the same sense that self-defense is not wrongful. *See Braxton v. Commonwealth*, 195 Va. 275, 278, 77 S.E.2d 840, 841-42 (1953) (discussing the right of self-defense). Moreover, a parent's use of corporal punishment to discipline a child always will be intentionally inflicted. Even if the majority somehow considers corporal punishment inherently wrongful, it is an act that is legally justified. The state only becomes interested in corporal punishment when the acts become unlawful. *See Carpenter*, 186 Va. at 861, 44 S.E.2d at 423.

Unlawfulness is the excessiveness or immoderation of the punishment. *See id.* at 862, 44 S.E.2d at 424. If the punishment is unlawful, the parent may be found guilty of abuse, assault and battery, or unlawful wounding assuming an intent to maim. Only when corporal punishment, an act sanctioned by our common law, is undertaken without the sole intent to discipline, but rather with ill-will, corrupt motive, or the evil intent to injure gratuitously, may the parent be subject to a malicious wounding prosecution. Under the majority's reasoning, however, all cases of immoderate corporal punishment would be malicious since the punishment was intended and the excessiveness wrongful. The Virginia case law does not support that analysis. *Cf. Harbaugh*, 209 Va. at 697-98, 167 S.E.2d at 332 (conviction of assault and battery where a five year old child was severely beaten so as to cause bruises, blood seepage, purple marks and welts, and the outer layer of skin sticking to the child's underpants); *Carpenter*, 186 Va. at 856, 44 S.E.2d at 421 (where a seven year old child was beaten so badly that her entire body was covered with bruises that were open and bleeding and her face had a large bleeding gash).

At most, the evidence showed Campbell committed a legally justified act, corporal punishment, but did so in an unlawful manner. Absent ill-will or the like, malice does not inhere under such circumstances. The facts of this case do not support the proposition that Campbell intended to exceed the undefined parameters of moderation. Although intent may be inferred from the facts and circumstances of a case, the inferences must be reasonable and justified, and not speculative. *Patler v. Commonwealth*, 211 Va. 448, 457, 177 S.E.2d 618, 624 (1970), *cert. denied*, 407 U.S. 909 (1972). Even if Campbell's conduct was so immoderate that he became criminally liable for the beating, the evidence at best establishes an assault.

Moreover, the Commonwealth must prove specific intent if it undertakes to charge a violation of Code § 18.2-51. *See McKeon v. Commonwealth*, 211 Va. 24, 26, 175 S.E.2d 282, 284 (1970). Contrary to the Commonwealth's assertion, the bruise marks on the child did not establish beyond a reasonable doubt that Campbell intended "to maim, disfigure, disable, or kill." Code § 18.2-51. Certainly, Campbell intended to punish. It is less certain, and surely speculative, that he intended to cause more than temporary and inconsequential discomfort to the boys. Conduct

that causes "temporary and inconsequential" discomfort or disfigurement is not proscribed by the statute. *Lee v. Commonwealth*, 135 Va. 572, 578, 115 S.E. 671, 673 (1923). There was no attempt or intent by Campbell to cause injury to the child's vital bodily parts. *Cf. Dawkins v. Commonwealth*, 186 Va. 55, 62, 41 S.E.2d 500, 504 (1947) ("breaking the nose . . . and particularly . . . kneeing . . . genital organs, were actions peculiarly calculated to disfigure, or disable, and permanently disable").

Likewise, the evidence concerning the means used to inflict the beatings does not rise to the level of proving beyond a reasonable doubt the requisite intent. The use of a belt to punish a child is not so foreign to parenting that it raises an inference of intent to maim, disfigure, disable, or kill. Although the trier of fact was privileged to conclude that the bruising on the child was severe, the evidence establishes that the skin was not broken. Additionally, there is no evidence that the bruising required treatment by the physician.

The trier of fact could reasonably conclude upon these facts and circumstances that Campbell exceeded the bounds of moderation. These facts and circumstances, however, do not establish beyond a reasonable doubt an intent to cause serious or permanent harm. "[A]n intent to maim or disfigure cannot be presumed from an act which does not naturally bespeak such intent." *Banovitch v. Commonwealth*, 196 Va. 210, 217, 83 S.E.2d 369, 373 (1954). Because, at best, a trier of fact could infer from the means used to punish the child a disregard for his safety, the record would support charges of assault and battery or other lesser included charges of abuse. The record is insufficient, however, to support the charge of unlawful or malicious wounding. For these reasons, I would reverse and remand for retrial on lesser charges if the Commonwealth be so advised.