COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia

EDWARD CHILTON, S/K/A
 EDWARD CORNDELL CHILTON

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1531-13-3                       JUDGE WILLIAM G. PETTY
                                                    NOVEMBER 18, 2014
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              John T. Cook, Judge

              David D. Embrey for appellant.

              Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


        Edward Corndell Chilton was convicted of strangulation pursuant to Code § 18.2-51.6.

On appeal, Chilton argues that the trial court erred in finding that the victim suffered a bodily

injury as a result of the application of pressure to her neck.  For the reasons stated below, we

agree and reverse the judgment of the trial court.

                                              I.

        Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting

to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence presented at trial established that Chilton went to the home of his ex-girlfriend, Ebony Dickerson, on her invitation. At the end of the visit, the two got into an argument. Chilton and Dickerson "pushed each other," then Chilton left. Dickerson sat on the sofa with her infant daughter and watched the television. Less than ten minutes later, Dickerson heard "a lot of commotion," that is, "screaming" and "hollering" outside her front door. Dickerson got up and looked out the window of her front door to see that it was Chilton, visibly upset, kicking at her door. Dickerson then opened the door and let him in. Once inside, Chilton continued in his audible rant and eventually pushed and hit Dickerson. According to Dickerson, Chilton pushed her onto the couch, next to her infant daughter. Chilton and Dickerson proceeded to hit each other, while Dickerson was trying to get Chilton off of her. What happened next is not entirely clear. Initially, on direct examination, Dickerson testified that Chilton was "holding [her] down and at one point, he may have grabbed around [her] throat briefly." The questioning proceeded as follows:

> [Prosecutor:] As he grabbed you around your throat, did you ever lose consciousness? Did you ever black out?
>
> [Dickerson:] I saw black but it wasn't like I completely and totally lost conscious [*sic*].
>
> [Prosecutor:] Okay. So when you say you saw black, were your eyes open?
>
> [Dickerson:] I closed my eyes.
>
> [Prosecutor:] Okay.
>
> [Dickerson:] And when I opened my eyes, he was still there but he wasn't causing any harm to me then.

Then, on cross-examination of Dickerson, the following exchange occurred:

> [Defense Counsel:] And did his hands actually go around your throat or was he just lying on you? Is that what caused you to close your eyes?
>
> [Dickerson:] He was in the general area.
>
> [Defense Counsel:] But you can't say he actually put his hands around your throat?
>
> [Dickerson:] It wasn't a choking motion.

Dickerson agreed with counsel that Chilton then got up and left on his own accord. Dickerson said that she did not require any medical attention following the altercation and did not complain of any injury. On direct examination of the officer responding to Dickerson's eventual call to the police, Officer A.J. Johnson testified that he took photos of Dickerson's neck, but did not notice any bruising or other injury.[1]

At the conclusion of the trial, the trial judge noted, "I observed the witnesses on the stand and I found Mr. – Ms. Dickerson credible that there was a personal injury and I find the Commonwealth proved all the elements of that charge beyond a reasonable doubt." Defense counsel noted his objection to the ruling, and Chilton was eventually convicted of strangulation pursuant to Code § 18.2-51.6. It is that conviction Chilton appeals here.

## II.

Chilton argues that the trial court erred in finding that the victim suffered bodily injury by application of pressure to her neck. We agree.

In a challenge to the sufficiency of the evidence, we must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without

---

[1] The Commonwealth entered into evidence the photograph that Officer Johnson took. The photograph does not reveal, nor did the Commonwealth point to, any evidence that the photograph establishes any type of injury to Dickerson. Furthermore, at oral argument, the Commonwealth conceded that Dickerson did not suffer any bodily injury to her neck. See Oral Argument Audio at 7:38 to 8:20.

evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)).

Code § 18.2-51.6 provides, "Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation, a Class 6 felony." The only issue on appeal is whether the victim suffered a "bodily injury," as required by Code § 18.2-51.6.[2]

In response to Chilton's appeal, the Commonwealth argues that Dickerson was strangled until she lost consciousness, "albeit briefly," and that "[t]his loss of consciousness was the result of Chilton 'applying pressure to the neck.' The bodily injury contemplated by the statute is injury resulting from the application of pressure to the neck. Consequently, loss of consciousness is precisely the type of injury that this statute was meant to encompass."

In Dawson v. Commonwealth, 63 Va. App. 429, 758 S.E.2d 94 (2014), this Court considered the term "bodily injury" as it relates to Code § 18.2-51.6. There, we upheld

---

[2] We note that Chilton does not argue on appeal that there was no strangulation. He argues, rather, that Dickerson suffered no bodily injury pursuant to Code § 18.2-51.6. Therefore, we will not address whether Chilton's actions amount to strangulation. Furthermore, it is undisputed that there was no breaking of the skin that would constitute a wounding. See Johnson v. Commonwealth, 58 Va. App. 303, 317, 709 S.E.2d 175, 182 (2011) (noting that "to prove the existence of a 'wound,' the Commonwealth must show that the victim's skin was broken or cut").

Dawson's conviction for strangulation pursuant to Code § 18.2-51.6. The evidence at trial established that Dawson "applied pressure to [the victim's] neck by pinning her hand to one side of her neck and squeezing the other side of her neck with his arm muscle." Id. at 437, 758 S.E.2d at 98. When Dawson applied pressure to the victim's neck, she could not breathe, she felt like she was drowning and everything started going black, and she fell down but could not remember doing so. Id. at 431-32, 758 S.E.2d at 96. Significantly, the nurse practitioner who treated her the following day testified that she had dark red bruises around her neck. Id. at 437, 758 S.E.2d at 98. After analyzing this Court's precedent regarding bodily injury resulting from strangulation, as well as this Court's interpretation of bodily injury under the malicious wounding statute,[3] we held that Dawson's acts impeded the victim's respiration and/or blood flow and that the bruises around her neck constituted a bodily injury. Id. at 435-37, 758 S.E.2d at 98.

One of the malicious wounding cases Dawson analyzed, as we do here, was Luck v. Commonwealth, 32 Va. App. 827, 531 S.E.2d 41 (2000). In Luck, two state troopers were injured as a result of a collision following a high speed car chase. Id. at 830-31, 531 S.E.2d at 42-43. One officer was out of work for a day or two, continued to be stiff for four to five days, and took prescribed medication for lower back pain. Id. at 831, 531 S.E.2d at 42. "He suffered a low back strain from being hit several times by the defendant's vehicle." Id. at 831, 531 S.E.2d at 42-43. The other officer had similar injuries and "suffered from 'mild back discomfort and flexion and extension' with 'tenderness to palpitation in the lumbar musculature.'" Id. at 831,

---

[3] See King v. Commonwealth, 2 Va. App. 708, 710, 347 S.E.2d 530, 531 (1986) ("The validity of using other Code sections as interpretive guides is well established. The Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed."). Code § 18.2-51 provides, "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony. . . ."

531 S.E.2d at 43. Notably, this Court held that the officers' injuries were sufficient to constitute "bodily injury" pursuant to the malicious wounding statute:

> The evidence permits the finding that the two troopers suffered bodily injury when they received soft-tissue injuries *that required medical treatment and caused pain and stiffness*. If those injuries did not meet the requirements for bodily injury, we would have the anomaly of an "everyday, ordinary" phrase having different meanings in criminal law and tort law.

Id. at 831, 531 S.E.2d at 43 (emphasis added).

In Campbell v. Commonwealth, 12 Va. App. 476, 481, 405 S.E.2d 1, 3 (1991) (en banc) (superseded on other grounds), this Court upheld Campbell's conviction for malicious wounding child abuse under Code § 18.2-51 for beating his three-year-old stepson with a belt. We held that although Campbell did not break the child's skin, "[t]here [was] no question that the defendant caused his stepson 'bodily injury.'" Id. at 483, 405 S.E.2d at 4. Campbell struck the child with a belt approximately seventeen times, leaving marks and bruises that ranged from the child's shoulder blades to his buttocks on his backside and from under his arm to his upper thigh on the right side of his body. Id. at 484-85, 405 S.E.2d at 5. The Court described this as a brutal beating of a defenseless child—the circumstances of the attack as well as the child's condition afterward were sufficient to demonstrate that the child suffered bodily injury. Id.

In English v. Commonwealth, 58 Va. App. 711, 718, 715 S.E.2d 391, 395 (2011) (quoting Luck, 32 Va. App. at 832, 531 S.E.2d at 43), this Court emphasized that bodily injury should be assigned its "'everyday, ordinary meaning,' which needs no technical, anatomical definition." We noted that "[t]o prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" Id. at 719, 715 S.E.2d at 395 (quoting Luck, 32 Va. App. at 831-32, 531 S.E.2d at 43). However, we specifically noted that "[b]odily injury 'includes soft tissue injuries, at least those

which require medical attention and have some residual effect.'" <u>Id.</u> (quoting Ronald J. Bacigal, <u>Criminal Offenses and Defenses</u> 46 (2010-11 ed.)).

In contrast to <u>Dawson</u>, <u>Luck</u>, <u>Campbell</u>, and <u>English</u>, the Commonwealth's evidence here was insufficient to demonstrate that Dickerson suffered a bodily injury, as this Court has previously defined that term. Dickerson neither sought nor required medical attention, displayed no evidence of visible bruising or cuts, suffered no residual effects following the altercation, did not take or require medication, and did not testify to suffering any type of pain or stiffness at the time of the altercation.

Furthermore, even if the victim suffered a momentary "black out," there was no evidence, medical or otherwise, that she suffered any physical or mental impairment as a result. Simply put, by failing to establish any observable external injuries, particularly in light of the victim's lack of complaint of injury, and without any evidence, medical or otherwise, of any internal or soft tissue injuries, the Commonwealth failed to establish that the application of pressure to the neck of the victim resulted in a bodily injury. Thus, the evidence was insufficient to support a conviction under the statute.[4]

III.

Because we hold that the evidence was insufficient to conclude that Dickerson suffered a bodily injury as required by Code § 18.2-51.6, we reverse the conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>

---

[4] Whatever the wisdom might be of criminalizing any strangulation that results in unconsciousness regardless of whether it causes bodily injury, it is up to the General Assembly to determine whether the statute should be amended to reach that result. "This Court's function is not to pass on the wisdom of legislation. 'Whether legislation is wise is a question for the General Assembly, and not [the Courts].' Rather, we must interpret statutes as written." <u>Dale v. City of Newport News</u>, 18 Va. App. 800, 802, 447 S.E.2d 878, 879 (1994) (quoting <u>City of Portsmouth v. City of Chesapeake</u>, 232 Va. 158, 163, 349 S.E.2d 351, 353 (1986)).