COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia


LATRICE CURTIS

                                                            MEMORANDUM OPINION* BY
v.        Record No. 0422-23-4                        JUDGE RICHARD Y. ATLEE, JR.
                                                                    APRIL 23, 2024

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                                   Michael E. Levy, Judge

            James Joseph Ilijevich for appellant.

            Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
            Miyares, Attorney General, on brief), for appellee.


        Following a bench trial, the trial court convicted Latrice Curtis of child cruelty, child

neglect, and assault and battery upon a family member.  Curtis challenges the sufficiency of the

evidence to sustain her convictions.  She also argues that the trial court erred in admitting a recorded

forensic interview under the hearsay exception provided by Code § 19.2-268.3, which permits the

admission of certain hearsay statements of child victims of specified crimes.  We find no error and

affirm the trial court.[1]

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "Although parts of the record are sealed, this appeal requires unsealing certain portions
to resolve the issues raised by [Curtis].  To the extent that certain facts are found in the sealed
portions of the record, we unseal those portions only as to those specific facts mentioned in this
opinion."  *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022).  "The rest remains sealed."
*Id.*

# I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Curtis's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

In September 2019, Curtis lived with her mother, sister, and five children in Stafford County. The children's father, Eugene "Gene" Ellis, frequently stayed at the house. One of Curtis's children, Z,[2] was four years old at that time.

On September 20, 2019, Stafford County Department of Social Services ("DSS") received a referral concerning the medical neglect of one of Z's siblings. Erin Kube, a DSS employee, met Z at his daycare on September 24, 2019, and she noticed "scratch marks, scabbing, and areas of discoloration" on Z. Kube photographed Z's back, chest, and legs. Concerning the cause of the injuries, Z volunteered, without Kube asking, that Curtis routinely beat him with a belt at night before he went to bed.

Notwithstanding Kube's observations of Z, the children remained in Curtis's care until she was arrested and incarcerated on October 12, 2019, for other charges. After Curtis's arrest, the children lived in the home with the other adults. DSS removed all of the children, including Z, on October 23, 2019, and placed them in foster care.

Following an initial foster care placement, DSS placed Z with Beverley McCauley and her family on November 6, 2019. The next day, McCauley took Z for a medical examination because she saw marks and scars on his body. The physician's report documented scars on Z's

---

[2] We refer to Z by his first initial to protect his privacy.

chest, abdomen, ear, cheeks, forehead, middle finger, back, legs, and shoulder. The scars ranged in size, with the examiner observing that some appeared to be from "a deeper laceration." After medical personnel counted 69 scars on Z's body, they stopped counting the marks. In addition, Z's buttocks exhibited "hypertrophied darkened skin indicative of previous spanking/hitting."

When speaking with McCauley, Z referred to Curtis as "Old Mom" or "Latrice," and he called his biological father "Gene" or "Old Dad." After his first parental visit with Curtis and Ellis, Z repeatedly begged McCauley not to send him back to them, because "those people were the ones that hurt [him]." Z would point to scars on his back, stomach, forehead, around his eye, and under his arms, saying that these injuries came from "Old Mom."

The police interviewed Curtis on January 2, 2020. Curtis claimed she could not explain Z's injuries. She admitted that she disciplined her children by spanking, but she claimed that she "barely beat them" and never left any marks. She denied ever having hit them with objects or seeing anyone else do so. When confronted about the numerous scars and old injuries found on Z's body during the medical examination, Curtis said she had never noticed them.

In a recorded interview with Jodi Green, a child forensic interviewer, Z said his "Old Mom" beat him with her hand and cut him with a knife more than once. Green asked if Ellis, or "Old Dad," said anything when Curtis beat him. Z, who had been speaking in a generally soft, relaxed tone throughout the interview, immediately responded in a piercing shout meant to imitate Ellis, "take it like a man!"

On the same day as the forensic interview, Nurse Monika Kral-Dunning performed a forensic medical examination upon Z.[3] She found numerous "healing wounds" all over Z's body—"too many to photograph individually." Given the number and placement of the scars on

---

[3] By stipulation, the Commonwealth introduced a partial transcript of the nurse's testimony from a parental termination case, as well as the nurse's written report of her examination of Z.

Z's body, the nurse stated that they were not consistent with the regular play of a four-year-old child. She opined that Z's injuries were consistent with intentionally inflicted trauma. The nurse documented her findings in a report that contained photographs of Z's healing wounds. Concerning the scars that he could remember, Z reported to the nurse that the injuries were caused when his "Old Mom" hit him with a belt, cut him with a knife, or injured him with her fingernails.

The police and CPS interviewed Curtis for the second time on March 3, 2020. Curtis denied ever cutting Z with scissors or a knife or threatening to do so. Curtis continued to deny harming Z or knowing how his injuries occurred. She denied disciplining Z physically except for having "popped" him on his hand. She admitted that Ellis had physically disciplined Z, but she maintained that no one else in the house did. Curtis insisted that she had never noticed any of the scars on Z's body. She repeated that Z was "clumsy" and frequently fell or ran into walls. She could not explain how falling into walls would cause Z's numerous cuts. She repeatedly said she had no idea as to why Z would say she had injured him. The police interviewer explained that, absent some cooperation in figuring out who had harmed Z, Curtis was not going to regain custody of her children and might face criminal charges. Curtis insisted that she would not be threatened and maintained that "these so-called bruises that [Z] has, I don't know what the fuck y'all are talking about. [Z has] never been fucking beaten."

Z was seven years old when he testified at Curtis's trial. He stated that he had been hurt by Curtis and Ellis before he went to live with McCauley. Specifically, Z said that Curtis hit him on his head and face "with her ring." In addition, Curtis cut Z on his stomach. When pressed for more information during cross-examination, Z said that he could not remember certain details of being cut because it had "been a very very long time."

- 4 -

The trial court convicted Curtis of child cruelty, child neglect, and assault and battery upon a family member and sentenced her to a total of 10 years and 12 months of incarceration with 6 years and 16 months suspended. Curtis now appeals.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

Challenging the sufficiency of the evidence to sustain her convictions for child cruelty, child neglect, and domestic assault and battery, Curtis asserts that the Commonwealth failed to prove that she was "the agent of harm, or was criminally negligent and allowed harm, or the risk of harm, to come to Z through her omission."[4] She maintains that Z's testimony was "conflicted" and that his injuries could have been caused by others who were responsible for his care.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal[] is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)).

Such deference stems, in part, from the trial court's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth*, 73 Va. App. 70, 81 (2021). Accordingly, "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as

---

[4] Other than asserting that the evidence did not prove that she was the person who harmed Z or permitted him to be harmed through criminal negligence, Curtis asserts no specific argument on appeal that the Commonwealth failed to prove any element of the offenses of child cruelty under Code § 40.1-103, child neglect under Code § 18.2-371.1(B)(1), or domestic assault and battery under Code § 18.2-57.2.

they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness'[s] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Z, who was seven years old when he testified at Curtis's trial, stated that she had cut him on his stomach and hit his face and head with her ring. The incidents occurred prior to his removal when he was only four, or even younger. Near the time of his removal, Z had told Nurse Kral-Dunning that Curtis had hit him with a belt, cut him with a knife, and hurt him with her fingernails. Z also reported to McCauley that Curtis had caused the marks on his body. Significantly, prior to his removal, Z had volunteered to DSS worker Kube that Curtis beat him with a belt at night before bed. This testimony was corroborated by the many injuries and scars on Z's body, observed by Kube, Kral-Dunning, and others, and carefully documented shortly after entering foster care. The trial court had the opportunity to observe these photographs of the scars and marks all over Z's body. As this Court has observed, "[a] picture may speak a thousand words, and these do." *Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991) (en banc). Z's testimony, as corroborated by the physical evidence and his statements to others about Curtis's abuse, was not inherently incredible, and the trial court was entitled to believe it. Therefore, viewing all the facts and circumstances in their totality, a reasonable factfinder could

- 6 -

conclude that Curtis injured Z through her actions, negligence, or omissions and that she was therefore guilty of the charged offenses.

## B. *Admissibility of Forensic Interview*

Curtis argues that the trial court erred in admitting, after Z testified, the recorded forensic interview of Z by Green.[5]  She maintains that the trial court erred in admitting the recording under Code § 19.2-268.3(B) "without ensuring that the statements had the required indicia of reliability."

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion."  *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (alteration in original) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 602 (2020)).  "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result."  *Id.* (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017)).  "Nevertheless, this Court reviews *de novo* 'any issue requiring statutory interpretation.'"  *Chenevert v. Commonwealth*, 72 Va. App. 47, 53 (2020) (quoting *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 45 (2019)).

"Code § 19.2-268.3 provides a hearsay exception allowing the admission of out-of-court statements of victims of certain crimes if that victim is under the age of thirteen at the time of the trial."  *Id.* at 54.  "If the defendant is charged with one or more of approximately thirty different listed crimes against children . . . , then the statement may be admitted, despite being hearsay, if two requirements are met."  *Id.*  "First, the trial court must find—considering seven, nonexclusive, enumerated factors—that 'sufficient indicia of reliability . . . render [the out-of-court statement by the child] inherently trustworthy.'"  *Id.* (alterations in original)

---

[5] Although Curtis objected before trial to the admission of Z's statements to Nurse Kral-Dunning, she does not assert this claim on appeal and withdrew an assignment of error concerning this issue.

(quoting Code § 19.2-268.3(B)(1)). "Second, the child must testify, or the trial court must declare the child 'unavailable as a witness' and 'corroborative evidence' of the 'offense against [the child]' must exist." *Id.* (alteration in original) (quoting Code § 19.2-268.3(B)(2)).

The only issue on appeal is whether the trial court properly concluded that sufficient indicia of reliability rendered Z's statements during the forensic interview inherently trustworthy. When making that determination, the trial court "may consider, among other things,"

> a. The child's personal knowledge of the event;
>
> b. The age, maturity, and mental state of the child;
>
> c. The credibility of the person testifying about the statement;
>
> d. Any apparent motive the child may have to falsify or distort the event, including bias or coercion;
>
> e. Whether the child was suffering pain or distress when making the statement; and
>
> f. Whether extrinsic evidence exists to show the defendant's opportunity to commit the act[.]

Code § 19.2-268.3(B)(1).

At a pretrial hearing concerning the admissibility of the forensic interview, Green testified to her extensive experience in conducting forensic interviews of children. She stated that her interview of Z conformed with best practices in the field to be a neutral fact-finding interaction. Because of Z's age and traumatic experiences, Green met him over multiple sessions. At the first session on January 31, 2020, McCauley stayed in the room; they "did not discuss any family or anything in his past" because the session was to build rapport and "just to make him comfortable." Z made the statements about Curtis hurting him during the second session on February 21, 2020. During the interview, Z sometimes left the room to show McCauley (whom he called "mommy") a toy or drawings that he made while talking to Green, but Green always went with him to ensure that McCauley did not influence Z or interfere in the conversation.

- 8 -

The trial court watched the recorded video at the pretrial hearing. Considering the statutory factors, the trial court found that Z had personal knowledge of the events as the victim. There was no indication Z's mental state was compromised during the interview. The trial court further found that Green was a credible witness and that there was no indication that Z was biased, coerced, or had a motive to fabricate his statements. Z was in no physical distress during the interview. Considering the totality of the circumstances, the trial court thus found the forensic interview inherently trustworthy and admissible under Code § 19.2-268.3. The record supports this conclusion, and we find no abuse of discretion in the trial court's decision to admit the forensic interview.

III. CONCLUSION

The evidence presented to the trial court was sufficient to support Curtis's convictions, and the trial court did not err in finding that the video of Z's forensic interview was admissible under Code § 19.2-268.3(B). Accordingly, we affirm the trial court's judgment.

*Affirmed.*