# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### HOWARD MILLER V. COMMONWEALTH OF VIRGINIA.

October 13, 1943.

Record No. 2691.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Vernoy B. Tate* and *Bandy & Bandy*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The plaintiff in error was charged with having raped Aileen Amos, an unmarried woman twenty years old. The jury returned a verdict of guilty and fixed his punishment at five years in the state penitentiary, which was approved by the trial court. This court granted him a writ of error and the case is before it for review.

The defendant brings seven assignments of error but we shall only be concerned with three which are all embraced within the general objection that the verdict was contrary to the law and the evidence. Our consideration of this issue will dispose of the case.

To meet the legal requisite of force to sustain the charge the Commonwealth relied chiefly on the accusation that the prosecutrix was drugged or doped by the accused, which rendered her unconscious and insensible and therefore an easy and irresponsible victim for the accomplishment of his purpose.

In every criminal charge there inheres the presumption of innocency in favor of the accused. It remains with him throughout the trial and casts upon the Commonwealth the burden of rebutting it by the production of evidence that will establish the charge beyond a reasonable doubt.

The defendant is a young man 19 years old and was employed as a loader in a coal mine in Wise county. The prosecutrix was employed in the clerk's office of the circuit court of the county. It was on Saturday night of June 6, 1942, that the neighborhood of the courthouse town of Wise and the nearby town of Norton was the scene of the

gathering of those persons, young and old, who were on pleasure bent. Their particular rendezvous were two night clubs known as Beverly Hills and Esco Inn. These were less than a fourth of a mile apart and seemed to afford fruitful vents for the exercise of pent up passions for social gaiety. The places served beer and wine and the usual exhilaration of dining and dancing—the latter to the strains of a nickelodian.

The prosecutrix started out with another girl and a boy friend in the early afternoon plying between Norton and Wise and the intermediate night clubs referred to. They visited first one and then the other until nighttime overtook them at Beverly Hills where they fell in with the accused and other companions of both sexes. From there they went to Esco Inn where wine is served. The accused had eighty-five cents with which he purchased at the establishment a quart bottle of white port wine. The prosecutrix drank a half of a glass of this and the rest of it was consumed by others of the party including the accused. This was the beginning of the unhappy episode of the evening. The prosecutrix testified that after drinking the wine she quickly passed out and remembered nothing more that happened, although the rest of the story is a dismal chapter of shocking events.

As we view it the Commonwealth's witnesses broke down its own case by their recital of acts which were an absolute denial of the presence of force either actual or constructive.

From Esco Inn they started to Beverly Hills but stopped by the wayside where they had sexual relations several times and this in sight and proximity of a service station and intersecting roads. The Commonwealth introduced a witness, Mode Spears, 34 years old, who operated the service station. He testified that they passed within 8 or 10 feet of him and they had their arms around each other and were laughing and talking. They stopped behind some of the trucks which were parked at the station, where they were practicing some of their amours, for he called to them in these words, "Get to hell from behind those trucks." He was

fixing a flat tire when they went past the station. He watched them and when they reached a rough, rocky road he picked her up and carried her over beyond a Coca-Cola sign. There the first sexual act took place. Spears turned the lights on them and yelled at them. The accused arose from the ground and caught her by the arm and helped her up and they walked off a short distance when the act was accomplished a second time. The witness aroused them again and at that time an automobile was passing and she stood in front of him, as if to shield him from detection. It passed on and they walked off down the road "hand in hand". From the witness' testimony it was a mutual affair. She sounded no alarm—made no outcry. The witness was asked this question: "Then from what you saw you didn't think she needed any assistance or didn't think she was drunk?

"A.   No."

And again: "Q.   About how long did it take to walk from Esco Inn down to this little sign?

"A.   In about a minute, I guess.

"Q.   And normally you could walk it in a minute or a minute and a half?

"A.   Yes, I guess so, I guess he was walking about two minutes from the pump to where he laid her down."

It will be noted that all of this took place after she said she had passed out and her memory was a blank.

Spears said that after the final act they walked erect and straight as far as he could see. All of this occurred about eleven o'clock at night when it was clear and they were visible.

Hobart Taylor, another witness introduced by the Commonwealth, said that he saw the prosecutrix about eleven o'clock that night at the Esco Inn and he could not say that she was drinking then. That again he saw her about two o'clock in the morning with the accused and he was carrying her across the road and then she stood up beside him and said, "Let's go over and sit on the bank." He said she could talk but it was difficult to understand her.

At this juncture it is not clear just what happened but as well as one can interpret the testimony there came into the drama a crowd of young men and a fight ensued. The prosecutrix fell into their hands and later the officers of the law, after being summoned, found her down behind some cliffs beside a road in an unconscious condition. She was disheveled. Her clothes were around her neck. There were numerous tracks in a soft damp place where seemingly a body had lain and her "step-ins" were found there. One of the officers, Tate Skeens, said that the prints of pants could be seen in the earth, "like serge, and it looked like they had been down on their knees." It is mild to say that she had been roughly handled.

The officers arrested, that night and the next day, eleven young men. Although the accused was at Beverly Hills he was not taken into custody but the next day he heard that the officers were looking for him and he voluntarily gave himself up. The conduct of the defendant cannot be condoned. It was disgraceful. It was enough to shame one steeped in moral infamy. But he was not tried for that. Rape was the charge laid at his door and the Commonwealth's evidence fails to sustain it.

The Commonwealth, in our opinion, has not proven its contention that the prosecutrix was drunk, doped or drugged, and could not, therefore, give her consent to the acts committed by the accused.

We reverse the judgment of the trial court and remand the case to be dealt with as the attorney for the Commonwealth may be advised.

*Reversed.*

GREGORY, J., dissenting.