COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Bray and Annunziata
Argued at Norfolk, Virginia


BENNIE JAMES HOWARD
                                            OPINION BY
v.        Record No. 2529-93-1      JUDGE LARRY G. ELDER
                                         DECEMBER 29, 1995
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    William F. Rutherford, Judge


              Duncan R. St. Clair, III; Charles A. Johnson
              (St. Clair & Johnson, P.C., on briefs), for
              appellant.

              Marla Graff Decker, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.



     Bennie James Howard (appellant) appeals his conviction for

rape in violation of Code § 18.2-61.  Appellant contends:

(1) the trial court erred in failing to grant his motion to

strike, which he made at the end of the Commonwealth's case-in-

chief; (2) insufficient evidence supported his rape conviction;

and (3) the trial court erred in failing to grant his motion for

a new trial based on after-discovered evidence.  Because

insufficient credible evidence existed from which the trial court

could have found appellant guilty, we reverse and dismiss the

conviction.

                                I.

                              FACTS

     On December 2, 1992, the fifteen-year-old victim left school

and accompanied Allen Elliott, a friend, and a group of young

people, whose ages ranged from fourteen to at least eighteen, to an apartment described in testimony as "Snap's apartment." The group arrived at Snap's apartment at approximately 9:30 a.m. The group that formed at Snap's apartment consisted of at least eleven women and men, including Allen Elliott, Mike Brockman, Lester Campbell, and appellant. The group socialized in the apartment, discussed sexual topics, and drank alcohol identified as "Mad Dog" from bottles and/or cups. Although the victim had tasted beer before December 2, 1992, she had never consumed any alcoholic beverages.

During the party, the victim went into the bathroom several times. Lester Campbell, appellant, and Mike Brockman entered the bathroom on one occasion while she was in there. When asked to testify specifically as to what events transpired in the bathroom, the victim said:

> I don't remember. I remember . . . standing up against the bathroom wall and Lester was like kissing me, and then all I remember is really laying on the floor and Lester was having sex with me and he was saying like, ["]oh, this feels so good["] and things like that, and then later on I scooted my head up into the corner of the toilet and the bath tub and I was laying there and I don't remember that much.

The victim testified she did not think she attempted to "get up" during the incident. The victim then described appellant's entry into the bathroom:

> [Appellant] came in like into the bathroom, that is--I really don't--I don't know if he came in after or before Mike, but I know he came in. . . . He--I remember laying on the floor and I had my legs closed,

2

and I remember opening--all I really remember is . . . [appellant] opened my legs and he started having sex with me he leaned overtop of me and he like--I don't know what he said.  He like said something and I really don't remember that much.

The victim testified that appellant placed his penis inside her vagina and that when someone attempted to initiate oral sex with her, she bit that person's penis.  The victim admitted that she never specifically told appellant she did not wish to have sex with him, and she stated that no one physically restrained her.

When these sexual encounters ended, the victim left the bathroom wearing only a white t-shirt.  She remained on the couch for a short time, calling for Allen Elliott to join her in another sexual encounter, and then returned to the bathroom.  At this time, Mike Brockman had sexual intercourse with the victim.

The victim again left the bathroom, exited Snap's apartment wearing only her t-shirt, and knocked on a neighbor's door.  The neighbor testified that she heard a knock at her door, followed by faint pleas for help.  When the neighbor opened her front door, the victim collapsed into her apartment and onto the floor, where she began to vomit.  After paramedics arrived, the victim told them, "it hurts, it hurts."  When the victim's mother and father arrived at the neighbor's apartment and asked the victim what had transpired and who was responsible, she replied, "Bennie."

After being transported to the hospital, the victim was still unable to recognize her parents.  The victim cried, moaned,

3

and passed "in and out of consciousness." An attending physician testified the victim "smelled of alcohol," "was lethargic," "was difficult to arouse to verbal stimuli," and had a serum blood alcohol level of .12 milligrams per deciliter. The victim testified that she was "drunk" at the party, was taking "antidepressant" medication that day, did not have a condition which rendered her unable to recall events, and "felt fine" before she drank the alcohol at the party.

Mike Brockman testified that the victim flirted with appellant, Lester Campbell, and himself; that she willingly had sex with him; that appellant requested him to assist in removing the victim's pants; and that he observed appellant on top of the victim while the victim had her hands around appellant.

Appellant testified that the victim flirted with him, which was verified by several witnesses present at Snap's apartment. Appellant testified that the victim led him into the bathroom, an event also observed by several witnesses. Appellant accompanied the victim to the bathroom after she told him she wanted to make love, a statement overheard by a person present at the party. Appellant testified that the victim removed his penis from his pants and fondled it, and he had intercourse with the victim after Mike Brockman removed her pants. Appellant further testified that the victim never said "one way or another" whether he could have sex with her, and that she told him "to take it easy" when they were about to begin intercourse. Following

4

intercourse, appellant asked the victim if she would give him a "blow job," but she said "no."

Ashley Alligood, another person at the party, testified that she heard the victim giggling while she was in the bathroom. Letha Elliott, another person at the party, testified that while the victim and Lester Campbell were in the bathroom, she overheard Lester Campbell ask the victim if she wanted him "to stop," to which the victim "said no."

Investigator Lawrence Hockman of the Norfolk Police testified that appellant made a sworn statement on December 5, 1992, in which he denied having sexual intercourse with the victim. Appellant admitted having consensual sex with the victim after being confronted with a sworn statement from Lester Campbell disputing his original story.

At the end of the Commonwealth's case-in-chief, appellant moved to strike the evidence on the ground of insufficiency; the trial court overruled such motion. Appellant then presented evidence but did not make another motion to strike the evidence or make a motion to set aside the verdict. Closing arguments were not transcribed and are not included in the record. The trial court found appellant guilty of rape and sentenced him on December 16, 1993 to twenty-five years in prison, with fifteen years suspended.

On February 17, 1994, appellant filed a motion to set aside the verdict and to grant a new trial based on after-discovered

5

evidence that called the victim's veracity into question.  The trial court held a hearing on the matter on March 17, 1994 and denied appellant's motion on March 22, 1994, "after hearing said motions and arguments of counsel, and for reasons stated in the record."

## II.

### MOTION TO STRIKE EVIDENCE/SUFFICIENCY

Appellant asserts that the trial court erred in finding, based upon the evidence presented, that appellant raped the victim, who claimed to be physically helpless.  We agree.

First, the Commonwealth correctly argues that, as a procedural matter, "when [appellant] elect[ed] to present evidence on his behalf, he waive[d] the right to stand on his motion to strike the evidence made at the conclusion of the Commonwealth's case."  McQuinn v. Commonwealth, 20 Va. App. 753, 755, 460 S.E.2d 624, 625 (1995)(en banc)(citing Spangler v. Commonwealth, 188 Va. 436, 438, 50 S.E.2d 265, 266 (1948)); see White v. Commonwealth, 3 Va. App. 231, 233, 348 S.E.2d 866, 867 (1986); Rule 5A:18.

This Court has held that in a bench trial, where a defendant wishes to preserve a sufficiency motion after presenting evidence, the defendant must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict.  See Campbell v. Commonwealth, 12 Va. App. 476, 478-81, 405 S.E.2d 1, 1-3 (1991)(en banc); McGee v. Commonwealth, 4 Va. App. 317, 321, 357 S.E.2d 738, 739-40 (1987); Rule 5A:18.  In this case, after appellant presented evidence, he failed to renew his motion to strike or move to set aside the verdict.  The trial transcript does not contain closing arguments.

Nevertheless, the sufficiency issue was preserved for appeal. The record reveals that after counsel for each side presented closing arguments, the trial court, sitting without a jury, stated that it needed to recess court until a further day to allow it the opportunity to examine the issue of the victim's physical helplessness. Specifically, the trial court stated:

> Gentlemen, I have gone over my notes. I have received the statements. There are certain other things and certain matters that I need to look into. I am going to take this under advisement until Tuesday afternoon. If either of you desire to present any matters on physical helplessness, of course I know what the definition is. At the time of the offense the victim in this case had a condition which rendered her unable to communicate an unwillingness to engage in sex and the defendant knew or should have known that definition. I know the definition. So if you don't mind, both of you give me the definition, but I will give you a decision on this matter at four o'clock on Tuesday afternoon.

We believe the purpose of Rule 5A:18 was met in this bench trial. The trial court took the sufficiency issue under advisement in order to consider it intelligently and, if necessary, to take corrective action to avoid unnecessary appeals, reversals, and mistrials. Head v. Commonwealth, 3 Va. App. 163, 167, 348 S.E.2d 423, 426 (1986).

Reaching the merits of the issue, the Commonwealth did not prove beyond a reasonable doubt that the victim was physically helpless. Code § 18.2-61(a)(ii) states:

> If any person has sexual intercourse with a complaining witness who is not his or her spouse . . . and such act is accomplished . . . through the use of the complaining witness's mental incapacity or physical

8

<u>helplessness</u> . . . he or she shall be guilty of rape.

(Emphasis added.)

Code § 18.2-67.10(4) defines "physical helplessness" as:

unconsciousness or any other condition existing at the time of an offense under this article which otherwise rendered the complaining witness <u>physically unable to communicate an unwillingness to act</u> and about which the accused knew or should have known.

(Emphasis added.)

Viewing the evidence in the light most favorable to the Commonwealth, the appropriate standard of review, we believe the Commonwealth did not prove its contention that the victim was so drunk that she could not give her consent to the acts committed by appellant. <u>Miller v. Commonwealth</u>, 181 Va. 906, 910, 27 S.E.2d 57, 58 (1943). A plethora of facts supports this conclusion. The victim specifically testified that when someone attempted to initiate oral sex with her, she bit that person's penis. The victim also refused to consent to appellant's request to engage in oral sex, even though she did not refuse his attempts at sexual intercourse. Witnesses testified that the victim initiated sexual relations with various men at the party, specifically asking the appellant to "make love to [her]." Witnesses described the victim as sitting on appellant's lap, kissing him, and discussing sexual relations before leading him into the bathroom. Prior to engaging in sexual intercourse, the victim told appellant to "take it easy." After engaging in intercourse with appellant, the victim then initiated further

9

sexual contact with other men.  A witness testified that while the victim and Lester Campbell were in the bathroom shortly before appellant entered the bathroom, she overheard Campbell ask the victim if she wanted him "to stop," to which the victim "said no."

After engaging in sexual relations with appellant, the victim testified that she left the bathroom and sat on the couch.  At that point, the victim testified she was "yelling for Allen . . . I was saying that I wanted Allen."  Subsequently, the victim admitted going into the bathroom with Mike Brockman and Allen Elliott and having sexual intercourse with Mike Brockman.

These actions are consistent with the behavior of someone who exercised volition over her decisions and actions, negating any reasonable inference of "being physically unable to communicate" as required by the statute.  Diminished capacity or poor judgment is not the issue in this case.  The question is whether the victim's use of alcohol made her "physically unable to communicate."  The trial court, confronted with conflicting testimony, was required to make appropriate credibility determinations.  However, the victim's testimony did not contradict the testimony furnished by numerous unimpeached defense witnesses.  In fact, the victim, who testified that she could not remember many of the details of the alleged rape, testified consistently in many respects with the defense witnesses.

10

The Commonwealth asserts that the trial court reasonably could have inferred physical helplessness from the fact the victim went to a neighbor's apartment shortly after the alleged incident, partially clothed, before vomiting and collapsing. The Commonwealth highlights the fact that the victim could not recognize her parents for a period of hours and passed in and out of consciousness after being taken to the hospital, where doctors determined she was intoxicated. However, assuming the victim was intoxicated to the point of being physically unable to communicate at the time she exited the apartment, this does not prove she was intoxicated to the same degree when she engaged in sexual intercourse with appellant. Even in conjunction with other evidence, the Commonwealth's case was not strong enough to prove appellant's guilt beyond a reasonable doubt. Compare Woodward v. Commonwealth, 12 Va. App. 118, 402 S.E.2d 244 (1991)(affirming the appellant's rape conviction where the victim was physically helpless because she was asleep at the time of intercourse). In so holding, we find the following admonition appropriate: "[t]he conduct of [appellant] cannot be condoned. It was disgraceful. It was enough to shame one steeped in moral infamy. But he was not tried for that. Rape was the charge laid at his door and the Commonwealth's evidence fail[ed] to sustain it." Miller, 181 Va. at 910, 27 S.E.2d at 58.

### III.

### AFTER-DISCOVERED EVIDENCE

Because we reverse on the sufficiency issue, we need not address appellant's argument regarding after-discovered evidence.

We therefore reverse the conviction based on the foregoing reasons.

<u>Reversed and dismissed.</u>