COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


INGRID EVERETTE, S/K/A
 INGRID A. EVERETTE

                                    MEMORANDUM OPINION* BY
v.    Record No. 0633-00-1          JUDGE RICHARD S. BRAY
                                         MARCH 27, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                    Rodham T. Delk, Jr., Judge

           (Lynn A. Sugg; Sugg & Scott, P.C., on brief),
           for appellant.  Appellant submitting on
           brief.

           (Mark L. Earley, Attorney General; H.
           Elizabeth Shaffer, Assistant Attorney
           General, on brief), for appellee.  Appellee
           submitting on brief.

     Ingrid A. Everette (defendant) was convicted in a bench trial

of assault and battery upon a law enforcement officer engaged in

performance of her public duties, a violation of Code

§ 18.2-57(C).[1]  On appeal, defendant challenges the sufficiency of

the evidence to support the conviction, complaining the trial

court "failed to credit" her testimony "that she did not remember"

the incident as proof that she lacked "the requisite intent" to

commit the offense.  However, because defendant did not properly

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Defendant was indicted for malicious wounding of a law
enforcement officer engaged in the performance of her duties in

articulate her argument before the trial court, we decline to consider the merits of the appeal.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal.

## I.

The Commonwealth's evidence was uncontroverted.  Following a disagreement with her boyfriend, defendant summoned Suffolk police and reported "that [her] daughter was kidnapped, and [she] was beaten up, and wanted to take out a warrant on [him]."  As a result of the ensuing investigation, a temporary detention order against defendant was obtained, and she was transported by Officers Tyrell Champagne and J.L. Naylor to a local hospital for observation and treatment.

En route, defendant, "very drunk," "hostile and uncooperative," was placed in handcuffs.  On arrival, she was "out of control," "very loud and obnoxious[,] cursing and uncooperative," and hospital staff requested Officer Naylor to assist undressing defendant and "getting her into hospital clothes."  When Officer Naylor removed the handcuffs, defendant began "flaying her arms," Naylor "grabbed hold of one of [her] arms," and defendant "bit" her on the hand, breaking the skin and leaving a scar, the injury that prompted the instant prosecution.

violation of Code § 18.2-51.1.

-

At the close of the Commonwealth's case-in-chief, counsel for defendant argued simply, "I would submit that the Commonwealth has not met its burden of proof in this case." The court overruled the "motion," defendant presented evidence in her defense and rested, without moving the court to strike the Commonwealth's evidence.

In closing argument, her counsel contended that, at the time of the offense, defendant was "suicidal[,] . . . used poor judgment[,] . . . apparently lost it" and was in a "mental state" that "could not give rise to a malicious wounding." The court agreed, but reminded defense counsel of the remaining "assault and battery issue." Counsel then acknowledged the incident "did happen," "can't excuse it," but contended misdemeanor "assault and battery would be enough . . . to punish [defendant] for the incident." The court, however, found her guilty of "assault and battery of a police officer in the performance of her duties," a felony proscribed by Code § 18.2-57(C), and this appeal followed.

## II.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. In furtherance of Rule 5A:18, this Court has oftentimes instructed "that in a bench trial, where a defendant wishes to preserve a sufficiency motion after

-

presenting evidence, the defendant must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict."  Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995).

Thus, assuming, without deciding, that defendant's remarks at the conclusion of the Commonwealth's evidence constituted a motion to strike, she waived her right to stand on such motion by subsequently presenting defense evidence.  White v. Commonwealth, 3 Va. App. 231, 234, 348 S.E.2d 866, 868 (1986).  When defendant failed to either renew her motion at the close of all the evidence, or make a motion to set aside the verdict, the remaining avenue available for preservation of the sufficiency issue was closing argument.  However, "[n]ot every closing argument accomplishes this objective.  A closing argument may address other issues."  Campbell v. Commonwealth, 12 Va. App. 476, 481, 405 S.E.2d 1, 3 (1991).

Defendant maintains before us that the court erroneously "fail[ed] to credit [her] testimony" that she "did not remember" the incident, as proof she lacked the requisite intent to commit the offense.  However, a review of defendant's closing argument does not disclose a sufficiency challenge to proof of intent based upon her evidence of memory loss, the sole issue on appeal.  To the contrary, defendant acknowledged an assault and battery of Officer Naylor but urged the court to convict her of a

-

misdemeanor.  Defendant, therefore, defaulted her appellate argument by not properly raising and preserving the issue before the trial court.

Defendant's assertion of the "ends of justice" exception to Rule 5A:18 to justify review of her appeal is without merit.  To successfully invoke the exception in the context of a challenge to the sufficiency of the evidence, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur," circumstances clearly not present on the instant record.  Redman v. Commonwealth, 25 Va. App. 215, 222, 487 S.E.2d 269, 272 (1997).

Accordingly, we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

I believe that at the conclusion of the trial evidence Ingrid Everette's trial counsel made a minimal but sufficient argument to preserve the appeal issue.  To put this matter in perspective, a fuller recitation of the evidence and incidents of trial is needed.

I.

Everette was indicted and tried for malicious wounding of a police officer in violation of Code § 18.2-51.1.  The Commonwealth's evidence proved that police officers were dispatched to the Western Tidewater Mental Health Center to transport Everette to Obici Hospital in the City of Suffolk.  A magistrate had issued an emergency civil custody order, which was replaced by a temporary detention order for mental health treatment.  See Code §§ 37.1-67.01 through 37.1-67.3.  The Commonwealth's evidence did not prove in any detail the circumstances that led to Everette's detention for mental health treatment.

The record, however, contains a trial exhibit, which consists of the various mental health reports prepared the night Everette was detained and involuntarily committed for mental health treatment.  The pre-admission screening form, which was prepared prior to the events at the hospital, reports that Everette "was assaulted by boyfriend," that "[t]his evening her

-

boyfriend tried to choke her [and] dragged her out of car," and that Everette "verbalized suicidal" intentions and "is depressed." The detention order, which formed the basis of Everette's referral to the hospital, recites that Everette is "mentally depressed and danger to self."

A nurse, who testified for the Commonwealth, indicated that after the police brought Everette to the hospital, Everette mentioned that she was concerned about the welfare of her child and that Everette was hysterical and abusive. She testified that Everette was in need of mental and physical attention and that she wanted to medicate Everette as soon as possible. She also testified that they needed "to get [Everette] to change [into hospital] clothes." Everette was in handcuffs, and she refused to remove her clothes.

One of the officers testified that "after she was given the shot [of a sedative,] the nurse asked all the males in the room to leave because they wanted to get the young lady undressed." He further testified that when Everette "went to the back room she had to be unhandcuffed in order to be strapped down to the bed." Everette "had one [injection of a sedative] prior to [their] taking her clothes."

The female officer who was to assist in undressing Everette testified she was injured as follows:

> She started flaying her arms and kicking her
> arms, and she wouldn't let us get her
> clothing off to get her into hospital

-

> clothes.  So in an attempt to help the
> nurses get her clothing off, I grabbed hold
> of one of her arms.  And when I did she
> brought my hand down to her mouth and bit
> me.

The officers and hospital personnel again injected Everette with a sedative and strapped her in restraints.

Following these events at the hospital, Everette was evaluated by a physician who found "sufficient cause to believe that [she is] mentally ill; . . . presents an imminent danger to [herself]; . . . and . . . require[s] involuntary hospitalization."  As a consequence, Everette was committed to Eastern State Hospital upon the finding that she "presents an imminent danger to [her]self as a result of mental illness."

Everette testified in her defense that she and her seven-year-old daughter had spent the day at the waterfront in Norfolk with Everette's male friend.  As they were driving back to Everette's home in North Carolina, an argument ensued between Everette and her friend.  After she convinced him to stop for water for her daughter, Everette became "very scared," refused to return to the car, and "was trying to think of a way to get [her] daughter out of the car."  When she refused her friend's demand that she return to the car, he beat her.  She testified that he choked her, pushed her to the ground, kicked her, dragged her over the parking lot, and then drove away with her daughter.  She heard him say he was "going to kidnap" her daughter, and she saw her daughter's hands at the window as the

-

car left.  The police arrived after Everette went into the store and asked for help.  Everette testified that she related these events to the police before the paramedics treated her and took her to the mental health center.

Everette also testified concerning the following events:

> I was taken to the building and there was a person out there that was asking me questions.  I was telling her I was beaten and my daughter was kidnapped.  Was anyone getting my daughter back?  He had threatened me before that he was going to take my daughter.  That's all I have is my daughter.  I didn't know what he was going to do to her, you know, and I wanted them -- I wanted my daughter back.  And she told me she was going to send me to the hospital.  I asked her why do I need to go to the hospital for?  She said because I told her I was going to kill myself.  I didn't have anything else to live for without my daughter.  And she said yes, we're going to help you because you didn't deserve this.  And the next thing I know I was taken away.  I was handcuffed.  I asked them why were they handcuffing me?  And the officers held me down because I didn't want to be handcuffed.  I didn't know what was going to happen to me.  And then they took me out of the car and took me into the hospital.  And all I remember is being at the hospital, and I remember getting a shot, and I don't remember anything after that.  I woke up the next morning and I was like in a daze.  I was asking what I was doing here.  I stayed like that all day.  My head was light and then I was transported to another hospital, Williamsburg Mental Hospital.  And I stayed there either eight or nine days.

## II.

At the close of the evidence, Everette's trial counsel first argued as follows:

-

If Your Honor please, in noting the report
from Western Tidewater Mental health on that
night it's noted in there that this offense
of where she was assaulted by her boyfriend
that was taken approximately at 11:30 on
that night that she says she was assaulted
by her boyfriend.  They say basically in the
report that she was suicidal.  She used poor
judgment.  Her insight was limited, and she
apparently just lost it.

How does that answer to the charge in
this case?  The answer to the charge is in
this report, Your Honor.  I think based on
her mental state that night, I'm not sure
that can give rise to a malicious wounding.

The trial judge ruled that the evidence did not prove

malice but "[w]e've got unlawful and we've got this assault and

battery issue."  In response, trial counsel further argued as

follows:

And, of course, I would argue to the Court
that this lady is out here at night.  Her
boyfriend kicks her out and beats her up and
runs out with the child.  She gets
committed.  I might come in and argue that
while she was mentally off and maybe that
would secure it, but based on her own
testimony that it would not elevate to a
felony because of an incident that happened
when she was obviously not in her total
right mind.  It happened that fast.  It
shouldn't have happened.  She could be
punished for a misdemeanor assault and
battery with a year hanging over her, and
whatever is enough length of treatment.

She's an emotional girl, which I was
hoping that the Court would not elevate it
to a felony because of the one little
incident.  After that incident she was
medicated, but I can't excuse it.  It did
happen.  I'd say she ought to be found not
guilty.  But I think assault and battery

-

would be enough on her record to punish her
for the incident.

                              III.

Rule 5A:18 is designed to allow the trial judge an opportunity to correct any error that is noted by a party at trial and to allow the opposing party the opportunity to offer an alternative to an objectionable ruling.  Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991).  The rule, thus, promotes judicial efficiency by reducing the necessity for new trials and protects against the costs of unnecessary litigation. Id.  While a general objection does not satisfy the rule, a "simple statement that embodies the objection and reason therefor" does suffice.  Id. at 515, 404 S.E.2d at 738. Furthermore, counsel may make this statement during closing argument provided that he or she directly addresses the argument to the judge and "expressly raise[s] the issue."  Campbell v. Commonwealth, 12 Va. App. 476, 480-81, 405 S.E.2d 1, 2-3 (1991).

In this case, Everette's trial counsel clearly argued that "she ought to be found not guilty."  Trial counsel's argument alternatively suggested that at best the evidence established only a misdemeanor offense.  He raised the issue of intent by stating that Everette "was suicidal.  She used poor judgment. Her insight was limited."  He continued that argument by contending that Everette's mental state could not "give rise to

-

a malicious wounding."  He argued that she was medicated and the evidence could lead to no more than a misdemeanor.

The record indicates the trial judge knew what issue they were discussing.  Despite the fact that Everette's trial counsel did not specifically mention Everette's loss of memory, he did assert her suicidal state of mind, lack of insight, and the injection she was given.  Clearly, the trial judge understood the argument concerning intent because he reduced the offense from malicious wounding to the lesser offense of felony assault and battery of a law enforcement officer.  See Code § 18.2-57(C).  The judge sentenced her to two years in prison, suspended one year and six months of that sentence, and imposed the mandatory minimum sentence of six months in prison.

> On this record, there is no question that
> the trial court was adequately advised of
> the defendant's position, that it did
> consider the issue raised, and that it had
> the opportunity to take corrective action.
> Therefore, the purpose underlying the
> contemporaneous objection rule was
> fulfilled, and it would be a useless
> technicality [to reject this appeal under
> Rule 5A:18].

Campbell, 12 Va. App. at 480, 405 S.E.2d at 2.  I would hold that trial counsel's argument in its totality was sufficient to alert the trial judge to the issue that the evidence was insufficient to prove Everette acted with criminal intent and, therefore, she was not guilty of an offense.

-

IV.

Everette contends on appeal that the evidence proved she "did not intend to bite [the] officer."  The following principles are applicable here:

> Assault and battery . . . requires proof of "an overt act or an attempt . . . with force and violence, to do physical injury to the person of another," "whether from <u>malice</u> or from <u>wantonness</u>," together with "<u>the actual infliction of corporal hurt</u> on another . . . <u>willfully or in anger</u>."  One cannot be convicted of assault and battery "without an intention to do bodily harm -- either an actual intention or an intention imputed by law."

<u>Boone v. Commonwealth</u>, 14 Va. App. 130, 132-33, 415 S.E.2d 250, 251 (1992).  Like any other element of an offense, criminal intent may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it.  <u>See</u> <u>Rice v. Commonwealth</u>, 16 Va. App. 370, 372, 429 S.E.2d 879, 880 (1993).  Thus, intent must be proved beyond a reasonable doubt.  <u>See</u> <u>Martin v. Commonwealth</u>, 13 Va. App. 524, 529, 414 S.E.2d 401, 403 (1992) (en banc).

The evidence proved that immediately prior to the incident Everette had been beaten by her male friend.  When Everette arrived at the hospital, she was concerned about the welfare of her child, and she was suicidal, hysterical, and suffering from a mental illness.  In this state, she was handcuffed, given a sedative by injection, and told to disrobe.  She was then forcibly disrobed by several people.

-

Although the evidence proved Everette was hysterical, suicidal, and abrasive, no evidence proved beyond a reasonable doubt that she acted with criminal intent when, in her struggle to keep her clothing and in a state of severe mental anxiety, she bit the officer. The reports prepared immediately prior to this incident noted that Everette was suicidal, "mentally depressed and [a] danger to [her]self." This evidence provides a reasonable hypothesis that Everette lacked the intent required to sustain this conviction.

For these reasons, I would reverse the conviction.