COURT OF APPEALS OF VIRGINIA


Present:    Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


STEPHEN LAMONT SPINNER
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2548-03-3                  JUDGE NELSON T. OVERTON
                                                         OCTOBER 12, 2004
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              J. Leyburn Mosby, Jr., Judge

           Kenneth M. Chitty, Assistant Public Defender, for appellant.

           Kathleen B. Martin, Assistant Attorney General (Jerry W. Kilgore,
           Attorney General, on brief), for appellee.


        Stephen Lamont Spinner (appellant) was convicted of obstructing justice, possessing an

imitation controlled substance with the intent to distribute it, and possessing a firearm after having

been convicted of a felony.  On appeal, appellant contends the trial court erred in denying his

motion to suppress the evidence.  Appellant also challenges the sufficiency of the evidence to

support his convictions.  Finding no error, we affirm appellant's convictions.

                                           FACTS

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

        On the night of October 30, 2002, Investigator R.S. Trent and Virginia State Trooper

Tuggle were on patrol in the area of 11th and Taylor Streets in Lynchburg, which was considered

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

a high drug area and an open air drug market. In the 1100 block of Taylor Street, the officers saw a car stopped in the roadway. A woman was leaning into the passenger window of the vehicle. Based upon his prior experience, Trent believed this conduct was consistent with a drug transaction.

The officers stopped their car and approached the other vehicle on foot. The woman who had been leaning into the vehicle immediately turned and walked in the direction of a group of eight to ten men congregated on the sidewalk. Appellant was among the group. Trent recognized appellant from prior narcotics arrests. Trent had received information from two sources four months before that appellant had possessed a firearm while at that same location. Police officers spoke with the woman who had been near the vehicle. She claimed she had been speaking with her mother, who was inside the car.

Due to the size of the group on the sidewalk and their prior dealings with appellant, Trent and Tuggle left the location to obtain the assistance of other officers before approaching appellant. A group of police officers then convened in another area. About thirty minutes after Trent had observed appellant in the 1100 block of Taylor Street, eight to ten officers, including Trent, Tuggle, Investigator M.L. Jamison, and Virginia State Trooper Metro, converged upon that location. Like Trent, Jamison was familiar with appellant and had received information that appellant was involved in the drug trade and possessed firearms. Jamison also knew appellant had a prior felony conviction.

The police found the group of men had moved to the intersection of 11th and Wise Streets, one block from Taylor Street. The police vehicles that stopped at the location were unmarked, with lights in the grill and in the rear as opposed to on the top of the car. Some of the officers, including Trent and Tuggle, were wearing blue tactical uniforms, and others were in plain clothes. Jamison was wearing a t-shirt with "police" written on the front and back. Some

of the officers had their badges displayed.  The officers got out of their vehicles and walked toward the intersection.

From about thirty to forty feet away, Trent spotted appellant among the people moving around at the intersection.  Appellant was walking in Trent's direction.  Suddenly, appellant stopped, abruptly turned ninety degrees, and ran at a "full sprint" northbound on 11th Street. Metro grabbed appellant by the coat.  Appellant slipped out of the coat and kept running.

Trent caught up with appellant after pursuing him for about one-half of a block.  Trent placed his hands on appellant's shoulders, and they both fell to the ground.  Trent ordered appellant to put his hands behind his back because the officer did not know whether appellant was armed.  Metro, Jamison, and another trooper arrived to assist Trent.  Appellant continued to struggle with the officers, swinging his arms and kicking.  Jamison tried to grab appellant at the waist and felt a hard object beneath appellant's hand.  Jamison immediately recognized the object as a gun.  Jamison repeatedly ordered appellant to release the gun and put his hands behind his back.  Eventually, Jamison succeeded in pulling the gun, a loaded .9 millimeter weapon, from appellant's hand at his waistband.

Inside the jacket appellant discarded when Metro grabbed him the police found a plastic bag containing several chunks of an off-white substance, which was not determined to be a controlled substance.  During questioning after appellant's arrest, appellant said he bought the "cocaine" found in the jacket for eighty dollars.  Appellant said he snorted cocaine, but did not smoke crack.  Jamison asked appellant how he was going to smoke the substance found in the jacket.  Appellant said, "I don't smoke that.  You sell that.  You can – well, some people do that item.  But I wouldn't smoke it."  Jamison asked, "You wouldn't smoke it?"  Appellant replied, "Hell no."  Appellant said he ran from the police because he had drugs in his pocket and knew

possessing drugs was illegal. Appellant also admitted his hand was on the gun when he fell to the ground.

I.

Appellant contends the police lacked probable cause to stop and detain him. "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation omitted). While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263. Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 517 U.S. at 696. However,

> "[t]here is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances – the whole picture.'"

Harmon v. Commonwealth, 15 Va. App. 440, 445, 425 S.E.2d 77, 79 (1992) (citations omitted).

---

[1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

The police seized appellant for purposes of the Fourth Amendment when Trent placed his hands upon appellant and the two fell to the ground.  See Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*) (stating that "[i]n order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority").  At that juncture, the officers had observed appellant at night in an area known for drug activity.  Appellant had previous arrests for narcotics.  The police also had information that appellant had possessed a firearm while in that same location.  Although the woman who had leaned inside the car in the roadway provided information to the contrary, Trent had observed what he believed to be, based upon his experience, a drug transaction near a group that included appellant.

Eight to ten police officers had converged at the same time in several vehicles upon one intersection.  Many of the officers wore clothing or badges indicating they were the police.  Appellant, though initially walking in Trent's direction, abruptly turned and ran.  These facts support the conclusion that appellant recognized the presence of the police and was trying to avoid contact with them.  As the Supreme Court has noted, "Headlong flight – wherever  it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such . . . .  Flight, by its very nature is not 'going about one's business'; in fact, it is just the opposite."  Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000) (citation omitted).

The facts and circumstances demonstrated that the police possessed reasonable articulable suspicion that appellant was involved in criminal activity.  The officers were entitled to detain appellant to dispel or confirm their suspicion.  "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'"  Thomas v. Commonwealth,

16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994) (citations omitted).

During the officers' attempts to subdue appellant, Jamison felt a gun at appellant's waistband. Jamison knew appellant had a prior felony conviction. The police then possessed probable cause to arrest appellant for possessing a firearm after a felony conviction. Therefore, the trial court did not err in denying the motion to suppress.

II.

Appellant also challenges the sufficiency of the evidence to support his convictions for obstructing justice, possession of an imitation controlled substance with the intent to distribute it, and possession of a firearm after having been convicted of a felony. First, appellant argues the evidence did not prove he intended to distribute the imitation controlled substance. "'Intent is a state of mind that may be proved by an accused's . . . statements and that may be shown by circumstantial evidence.'" Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (citations omitted).

Appellant told the police that the substance was not for his own personal use. Although appellant's statements were not outright admissions, they indicated that he intended to sell the substance, which he believed to be cocaine. Moreover, the police confronted appellant in an area known to be an open air drug market, a relevant consideration in determining his intent. See Kidd v. Commonwealth, 38 Va. App. 433, 448, 565 S.E.2d 337, 344-45 (2002). Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant possessed the imitation controlled substance with the intent to distribute it.

Appellant also challenges the sufficiency of the evidence relating to the obstruction of justice conviction. Pursuant to Code § 18.2-460(C), it is a Class 5 felony to "knowingly

attempt[] to intimidate or impede . . . any law-enforcement officer, lawfully engaged in the discharge of his duty," through "threats of bodily harm or force."

> Impeding an officer's duties does not require the defendant to commit "an actual or technical assault upon the officer." Rather, "there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action."

Craddock v. Commonwealth, 40 Va. App. 539, 552-53, 580 S.E.2d 454, 461 (2003) (citations omitted).

The evidence proved that appellant slipped out of his coat and ran when Metro initially attempted to detain him. Appellant struggled, kicked, and was uncooperative after Trent and other officers detained him. He refused to move his hands into view. In fact, appellant's hand was at his waistband on top of a loaded firearm. These facts and circumstances proved beyond a reasonable doubt that appellant was guilty of violating Code § 18.2-460(C).

Appellant contends that he was justified in using force against the officers to resist an unlawful arrest. As noted above, however, appellant was not arrested at the time the officers attempted to detain him. Moreover, appellant was not entitled to use any amount of force to resist an investigative detention. See Commonwealth v. Hill, 264 Va. 541, 548, 570 S.E.2d 805, 809 (2002).

Appellant also argues on appeal that the evidence was insufficient to prove that he possessed a firearm after having been convicted of a felony. At trial, however, appellant did not move to strike the evidence or set aside the verdict relating to that offense. In a bench trial, at the conclusion of all the evidence, the defendant must make a motion to strike, present an appropriate argument in summation, or make a motion to set aside the verdict, in order to preserve the question of the sufficiency of the evidence. See Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995). Appellant did not preserve the question of the

sufficiency of the evidence to support the firearm conviction. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## CONCLUSION

For the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed</u>.