COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Malveaux

TYSON VERNARD MCCLAIN

v.     Record No. 1241-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 13, 2022

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

(John M. Spencer, Spencer, Meyer & Koch, PLC, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Ken J. Baldassari, Assistant
Attorney General, on brief), for appellee.

Tyson Vernard McClain ("appellant") was convicted in a jury trial of malicious wounding,

in violation of Code § 18.2-51, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. On appeal, he argues that the evidence was insufficient to sustain his convictions

and asserts that he acted in self-defense. Appellant also contends that he received ineffective

assistance of counsel at trial. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm appellant's

convictions.

I. BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial.' Accordingly, we regard as

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (citation omitted) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On January 7, 2020, Spotsylvania County Sheriff's Deputy Nicholas Covington received a report of a shooting at a residence. When he arrived at the home, Covington encountered James Courtney's brother, Ollie, who told him that James had been shot. James then came outside, bleeding from a gunshot wound to the left shoulder. Covington accompanied James to the hospital while other officers began investigating the shooting.

James testified at trial that at the time of the shooting, appellant was in a relationship with Harnisha, James's sister, who lived with her three children in the home where the shooting occurred. James and his wife drove to Harnisha's house after a phone call from James's nephew led him to believe that "[his] nieces and nephews were going to be put in harm[']s way." When James arrived, he and Ollie told appellant that they had heard he was "beating on" Harnisha. They also told appellant, "you've got to go."

Appellant did not want to leave and instead "threw a punch" at James; James ducked and "uppercutted" before Ollie started scuffling with appellant. James denied throwing the first punch and said it "wouldn't make sense" for him to "try to fight somebody bigger than me." After appellant pushed Harnisha, she and James's wife went upstairs to be with Harnisha's children; James followed to check on them after first separating Ollie and appellant. Ollie then went upstairs and spoke with his nephew before returning downstairs to see if appellant was still there.

At that point, James heard "a gun get cocked," ran downstairs, and saw appellant pointing a gun at Ollie. James tried to "de-escalate the situation," but appellant ran outside. James followed because he was concerned that appellant might be a danger to a neighbor or might "go get friends" to come "hurt all of us." James denied chasing appellant and testified that he was on one side of the

road and Ollie was on the other when he heard appellant say, "I got something for you guys." Appellant, who James estimated was twenty-five yards away, then turned and fired a shot that struck James in the shoulder.

Detective Donnie Reid of the Spotsylvania County Sheriff's Office investigated the shooting. He testified that at the scene, he found a forty-five caliber spent cartridge casing in the middle of the street. Detective Reid did not find the weapon from which the spent casing had been ejected. Several days later, when officers had located appellant, appellant told them variously that the gun "was in a safe place," he had thrown the gun "in the woods or a field," and "somebody" had the weapon, but he would not reveal whom.

When police interviewed appellant, he first claimed that he was being assaulted by James and Ollie when "Ollie pulled a gun," so "he ran out of the house." Appellant stated that James and Ollie had followed him, but he said nothing about the shooting until police confronted him about it. He then stated that during a "tussle" in the house, the "weapon may have somehow . . . been fired and hit" James. Detective Reid told appellant that police had not found a gun on Ollie, and appellant admitted that he had used a "house gun" that had been "under a mattress." Appellant claimed that James and Ollie had been following him up the street when he "kind of turned around and just fired to get them off him." Appellant did not tell Detective Reid that he thought either James or Ollie was armed or about to shoot him; rather, he said that James was a "good guy" and "didn't deserve this."

Appellant testified at trial that at the time of the incident, he was living with and engaged to Harnisha. The couple had been in bed when "the basement door flew open" and James and Ollie came in "screaming," asking him if he was "hitting" Harnisha. He and Harnisha both denied that he hit her, but James and Ollie became "irate." Harnisha then "jumped in front of" appellant, but James hit her, so appellant "pushed her out [of] the way." Ollie then struck appellant as James was

- 3 -

"fighting" Harnisha. After appellant got Harnisha out of the room, James and Ollie "jump[ed]" him. Appellant heard the children crying and tried to leave the room, but Ollie put him in a choke hold from behind while James punched him in the stomach. Either James or Ollie then struck appellant's head.

Appellant testified that at that point he tried to walk upstairs, but James and Ollie blocked his way, so he ran into a guest room and locked the door. He could hear the two brothers "talking about some type of gun." After Ollie used a pocketknife to "pick[] the door," he smashed appellant's phone. Appellant claimed that James and Ollie then "[went] for the gun," which he said was "on the side of the bed or by" the closet. After Ollie "rack[ed] the gun," appellant charged at him and they fell on the bed. When James entered the room, appellant said, "you guys are not going to kill me" and ran from the house with the gun. James and Ollie chased after him and told him they were going to kill him. Appellant testified that he "just turn[ed] around," said "get away from me," and fired. He claimed to have "aimed at the floor" and did not know how James had been hit in the shoulder. Afterwards, he dropped the gun and ran.

Appellant claimed that he had "just wanted to scare" James and Ollie because he had "seen another gun." He also claimed not to have known that James had been shot until Detective Reid told him about it. When asked why he did not turn himself in to police, appellant claimed he was "scared for [his] life" because James and Ollie had "threatened [his] parents." He also admitted that he had been concerned that his "story would not be told correctly" since he had a prior criminal record, including a conviction for perjury.

The jury convicted appellant of malicious wounding and use of a firearm in the commission of a felony. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to sustain his convictions. Relying on his testimony that he "was lying in bed" when James and Ollie "attacked" him, appellant contends that he acted in self-defense while "fearing for his life." He argues that even when viewed in the light most favorable to the Commonwealth, his conduct "d[id] not amount to a malicious act and were clearly self-defense." Appellant concedes that he did not move to strike the Commonwealth's evidence or otherwise present his sufficiency argument to the trial court, but asks us to address his argument under the "ends of justice" exception to Rule 5A:18.

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The Rule "requires a litigant to articulate an objection with specificity 'so that the trial judge . . . know[s] the *particular* point being made in time to do something about it.'" *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (alterations in original) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 750, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "To preserve an argument concerning the sufficiency of the evidence in a bench trial, a defendant 'must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict.'" *Taylor v. Commonwealth*, 58 Va. App. 185, 189 (2011) (quoting

*Howard v. Commonwealth*, 21 Va. App. 473, 478 (1995)). "[T]he failure to object to the sufficiency of all the evidence is a waiver of that issue just as if the defendant 'failed to object to any other matter at trial.'" *Murrillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 (2010) (quoting *White v. Commonwealth*, 3 Va. App. 231, 233 (1986)).

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "[T]o invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997). "Otherwise, we would be required under the ends of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id*. Instead, to demonstrate that a miscarriage of justice has occurred, an "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id*. at 222.

Appellant's argument ignores the Commonwealth's evidence and instead cites to his own testimony to suggest that he acted without malice and while fearing for his life in self-defense. In essence, he asks this Court to reweigh the evidence, reach the opposite conclusion of the jury,

and conclude that "the Commonwealth *failed*" to present sufficient credible evidence to support his convictions. *See id.* at 221. He points to nothing in the record affirmatively proving that an element of the offense did not occur or that appellant was convicted for non-criminal conduct. Accordingly, the ends of justice exception does not apply, and Rule 5A:18 bars consideration of appellant's argument.

B. Ineffective Assistance of Counsel

Appellant contends that his counsel provided ineffective assistance by not issuing a subpoena to Harnisha and failing to move to strike the evidence. However, "[c]laims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal." *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001) (citing *Johnson v. Commonwealth*, 259 Va. 654, 675 (2000)). Thus, we do not consider appellant's argument regarding ineffective assistance of counsel.

III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

*Affirmed.*